UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUALTEQ, INC., | ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC. *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

## REVISED AGREED AMENDED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL IN WHICH AMALGAMATED BANK OF CHICAGO ASSERTS AN INTEREST

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of orders pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (1) authorizing the Cash-Encumbered Debtors to use cash collateral; (2) scheduling a final hearing on the Motion; and (3) for other related relief as necessary; Amalgamated Bank of Chicago ("ABOC") having consented to a limited and interim use of its cash collateral ("Cash Collateral"); the Court having entered a Final Order Authorizing Use of Cash Collateral in which ABOC Asserts an Interest on October 6, 2011 (the "Final Order"); ABOC having then filed a Limited Objection to the Proposed Budget

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: (i) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (ii) 1400 Centre Circle, LLC (7091); (iii) 5200 Thatcher, LLC (6991); (iv) 5300 Katrine, LLC (6016); (v) Anar Real Estate, LLC (9267); (vi) Automated Presort, Inc. (0850); (vii) Avadamma LLC (4775; 4800; 4810; 4829); (viii) Creative Automation Company (4350); (ix) Creative Investments, a General Partnership (5992); (x) Fulfillment Xcellence, Inc. (3461); (xi) Global Card Services, Inc. (4581); (xii) Unique Data Services, Inc. (1068); (xiii) Unique Embossing Services, Inc. (1043); (xiv) Unique Mailing Services, Inc. (2594); (xv) Versatile Card Technology, Inc. (5258); (xvi) Veluchamy LLC (3434); and (xvii) Vmark, Inc. (5904).

[2]      Capitalized terms not defined herein shall have the meanings provided in the Motion.

Revised Agreed Amended Final CCO with ABOC (3-16-12)(R.1)

of Debtors for the Continued Use of the Bank's Cash Collateral, dated December 19, 2011 [Dkt.

No. 639] (the "Objection"); the Debtors having then filed a certification of counsel (the

"Certification") seeking entry of this Agreed Amended Final Order Authorizing Use of Cash

Collateral in which ABOC Asserts an Interest (the "Agreed Amended Final Order"); the Court

having considered the Motion, any responses thereto, the statements of counsel, the Objection,

and the Certification; and it appearing to the Court that granting certain relief on the terms and

conditions herein contained is necessary and essential to enable Fulfillment Xcellence, Inc.

("FXI") and Versatile Card Technology, Inc. ("VCT" and together with FXI, the "Cash

Collateral Debtors") to continue to operate their businesses; and VCT and FXI having agreed to

provide ABOC adequate protection of its interests on the terms set forth herein; and good cause

appearing therefor,

PARTIES REPRESENT THE FOLLOWING:

**THE COURT HEREBY FINDS AND CONCLUDES AS FOLLOWS:**

A.      On August 14, 2011, (the "Petition Date") Qualteq, Inc., d/b/a VCT New Jersey,

Inc., 1400 Center Circle, LLC, 5200 Thatcher, LLC, 5300 Katrine, LLC, Automated Presort,

Inc., Avadamma LLC, Creative Automation Company, Creative Investments, A General

Partnership, Global Card Services, Inc., Unique Data Services, Inc., Unique Embossing Services,

Inc., Unique Mailing Services, Inc., University Subscription Service, Inc., Veluchamy, LLC,

Vmark, Inc., FXI and VCT (collectively, the "Initial Debtors") each filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court" or "Court"). Additionally, on September 11, 2011

the Initial Debtors' real estate management company, Anar Real Estate LLC ("Anar,"

collectively with the Initial Debtors, the "Debtors") filed for chapter 11 relief (Case No. 11-

12860). By order dated December 6, 2011, the chapter 11 case of University Subscription

Service, Inc. has been dismissed. Pursuant to Bankruptcy Code §§ 1007 and 1108, the Debtors are presently acting as debtors in possession, continuing in possession of their respective property, and managing and operating their respective businesses, and the Debtors' chapter 11 cases are being jointly administered pursuant to the Court's Orders entered August 16, 2011 [Dkt. No. 28] and September 13, 2011 [Dkt. No. 172].

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The Debtors provided notice of the final hearing on the Motion and the Final Order to all parties entitled to receive such notice pursuant to Fed. R. Bankr. P. 2002, and the Court concluded that such notice was sufficient and adequate under the circumstances and complies with Fed. R. Bankr. P. 4001. Subsequently the Debtors have provided notice of the hearing on the Certification and the proposed Agreed Amended Final Order to all parties entitled to receive such notice pursuant to Fed. R. Bankr. P. 2002, and the Court concludes that such notice is sufficient and adequate under the circumstances and complies with Fed. R. Bankr. P. 4001.

D.      Without prejudice to the rights of the Unsecured Creditors' Committee (the "Committee") or any other interested party and subject to limitations set forth herein (including, without limitation those in paragraph 19 below) the Debtors admit, stipulate and agree that:

(1)      Pursuant to: (i) that certain promissory note (the "Note") dated November 18, 2009 executed by the Cash Collateral Debtors in favor of ABOC in the principal amount of three million, six hundred thousand dollars ($3,600,000.00); and (ii) that certain Business Loan Agreement (the "BLA") executed by and among the Cash Collateral Debtors and ABOC, ABOC made certain loans and other financial accommodations to or for the benefit of the Cash

Collateral Debtors (the "Credit Facility"). In connection with the Credit Facility and to secure all obligations due to ABOC under the Credit Facility, on or about November 18, 2009, the Cash Collateral Debtors each entered into a Commercial Security Agreement (collectively, the "CSAs").

(2)     All amounts due under the Credit Facility were originally to be paid in full to ABOC on June 30, 2010. Pursuant to two Change in Terms Agreements (the "CITs") by and among the Cash Collateral Debtors and ABOC, dated June 30, 2010 and June 30, 2011 respectively, the Credit Facility was increased to four million dollars ($4,000,000.00) and the term for repayment was extended twice - first to June 30, 2011 and then to June 30, 2012.

(3)     The BLA established a borrowing base (the "Borrowing Base"), for advances under the Credit Facility consisting of eligible accounts (domestic and foreign), inventory and certain real estate pledged as collateral. Specifically, the Borrowing Base amounts are 75% of eligible accounts, 50% of eligible inventory, 50% of eligible foreign accounts, and $500,000 against pledged real estate.[3]

(4)     As of the Petition Date, the principal amount outstanding from the Cash Collateral Debtors to ABOC was approximately $3,983,982.00, plus accrued and accruing interest, fees and costs (the "Amount Outstanding"). Also as of the Petition Date, the total combined eligible collateral (excluding the pledged real estate) under the Borrowing Base was approximately $6,447,559, placing ABOC in an oversecured position.

(5)     To secure the Amount Outstanding, pursuant to the CSAs, the Cash Collateral Debtors each granted ABOC a first priority security interest in substantially all of the

---

[3] The pledged real estate consists of the marital residence of Parameshwari Veluchamy and Pethinaidu Veluchamy, joint debtors in a chapter 7 bankruptcy, and is encumbered by a first mortgage and therefore is not being counted towards the "Combined Total Eligible Collateral," on the Borrowing Base Certificates described in paragraphs 8 and

Cash Collateral Debtors' assets (subject to subordination of the interests of certain equipment lenders in certain equipment, hereinafter the "Priority Equipment Lenders"), including without limitation, all inventory, chattel paper, accounts, equipment, and general intangibles, as well as all accessions, attachments, replacements, products, rents, monies and proceeds thereof (the "VCT/FXI Collateral"). To further secure the Amount Outstanding, FXI entered into a Commercial Pledge Agreement (the "CPA") pursuant to which it pledged all of its rights and interests in two promissory notes, the first for $150,000.00 from Unique Embossing Services and the second for $970,000.00 from VCT (the "FXI Collateral," and collectively with the VCT/FXI Collateral, the "Collateral"). ABOC acknowledges and agrees that the Collateral does not include, and that the Prepetition ABOC Liens do not extend to, the following assets and their respective proceeds, if any (collectively, the "Unencumbered Assets"):

| Entity Name | Asset Description | Value as of Petition Date (according to Debtors' schedules) |
|---|---|---|
| Cash Collateral Debtors | Cash, as of the Petition Date, held in accounts not maintained at ABOC, including but not limited to, Hinsdale Bank & Trust and Community Bank of Downers Grove (the "Unencumbered Cash"). | $334,317 |
| Cash Collateral Debtors | Titled motor vehicles. | $5,308 |

For the avoidance of doubt, ABOC releases all rights, if any, that it has ever had or currently has in the Unencumbered Assets. ABOC further acknowledges and agrees that the Committee has not completed its investigation into whether the Collateral and the Prepetition ABOC Liens

---

11 of this Agreed Amended Final Order.

include and extend to the following assets (collectively, the "Other Assets"):

| Entity Name | Asset Description | Value as of Petition Date (according to Debtors' schedules) |
|---|---|---|
| Cash Collateral Debtors | Foreign patents and trademarks. | Unknown |
| Cash Collateral Debtors | Tort Claims. | Unknown |

(6)    The Note, BLA, CSAs, CITs and the CPA as well as all the other documents executed in connection therewith, are collectively referred to herein as the "Loan Documents." The Amount Outstanding and all other obligations due under the Loan Documents are collectively hereinafter referred to as the "Prepetition Obligations."

(7)    With the exception of Unencumbered Cash which is a component of the Unencumbered Assets, all of the Cash Collateral Debtors' cash, including without limitation all cash generated by the collection of their accounts receivable, sale of inventory or any other disposition of ABOC's Collateral constitute ABOC's cash collateral (the "Cash Collateral").

(8)    All of the Loan Documents are valid and enforceable by ABOC against the Cash Collateral Debtors. Subject to the reservation set forth in paragraph 18 with respect to the Other Assets and ABOC's acknowledgement that the Prepetition ABOC Liens do not extend to the Unencumbered Assets, ABOC duly perfected its liens upon and security interests in its Collateral in accordance with applicable law. Subject to the reservation set forth in paragraph 18 with respect to the Other Assets and ABOC's acknowledgement that the Prepetition ABOC Liens do not extend to the Unencumbered Assets, the liens and security interests of ABOC in the Collateral (collectively, the "Prepetition ABOC Liens") as security for the Prepetition Obligations, constitute valid, binding enforceable and perfected first priority liens and security

Revised Agreed Amended Final CCO with ABOC (3-16-12)

interests and are not subject to avoidance, disallowance, subordination or re-characterization pursuant to the Bankruptcy Code or applicable non bankruptcy law.

(9)     Subject to the reservation set forth in paragraph 18 with respect to the Other Assets and ABOC's acknowledgement that the Prepetition ABOC Liens do not extend to the Unencumbered Assets, the Prepetition Obligations constitute legal, valid and binding obligations of the Cash Collateral Debtors, no offsets, defenses or counterclaims to the Prepetition Obligations exist, and no portion of the Prepetition Obligations is subject to avoidance, disallowance, reduction, subordination or re-characterization pursuant to the Bankruptcy Code or applicable non-bankruptcy law, except as provided herein. The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against ABOC with respect to the Loan Documents or otherwise, whether arising at law or at equity, including, without limitation, any re-characterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code. The Debtors irrevocably waive any right to (i) challenge or contest the liens or security interests of ABOC in the Collateral, (ii) challenge or contest the validity of the Prepetition Obligations, or (iii) assert any claims or causes of action against ABOC or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or applicable non-bankruptcy law.

(10)   The Cash Collateral Debtors have an immediate and critical need to continue using Cash Collateral pursuant to the terms of this Final Order to, among other things, finance the ordinary costs of their operations, maintain business relationships with vendors, suppliers and customers, make payroll, and satisfy other working capital and operational needs. The Cash Collateral Debtors' access to sufficient working capital and liquidity through the use of

Cash Collateral pursuant to this Final Order is vital to the preservation and maintenance of the going concern value of their estates. Consequently, without the continued use of Cash Collateral to the extent authorized pursuant to this Final Order, the Cash Collateral Debtors and their estates would suffer immediate and irreparable harm.

(11)    In connection with the use of the Cash Collateral, the Cash Collateral Debtors, pursuant to sections 361 and 363 of the Bankruptcy Code, propose to grant to ABOC, as adequate protection for the Adequate Protection Obligations (as hereinafter defined): (a) to the extent that ABOC had perfected security interests prior to the bankruptcy filing and to the extent not heretofore granted, replacement first priority security interests in and liens upon (collectively, the "Adequate Protection Liens") all prepetition and post-petition real and personal property of the Cash Collateral Debtors, and all presently owned and hereafter acquired property, assets and rights, of the same kind and nature and in the same type of collateral in which ABOC held valid, perfected liens and security interests prior to the bankruptcy filing, wherever located, and the proceeds, products, rents, and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise but not including causes of action under chapter 5 of the Bankruptcy Code (the "Avoidance Actions"); and (b) a superpriority administrative expense claim under section 507(b) of the Bankruptcy Code (but not granting ABOC any right to share on superpriority basis in recoveries from Avoidance Actions) (the "Adequate Protection Priority Claim"). For the avoidance of any doubt, ABOC is not waiving its rights to share in the proceeds of the Avoidance Actions on account of its administrative or general unsecured claims, if any. The Adequate Protection Liens and the Adequate Protection Priority Claim shall be senior to any other security interests, liens, or encumbrances, subject only to, in the following order of priority: (1) any valid, perfected, and enforceable prepetition liens of Priority Equipment

Lenders which were senior to ABOC's respective liens or security interests as of the Petition

Date; (2) the payment of the United States Trustee's fees, pursuant to 28 U.S.C. § 1930, and (3)

any professional fees and disbursements accrued but unpaid as of the date of termination of the

Cash Collateral Debtors' use of Cash Collateral to the extent that such fees and disbursements

are set forth in any Budgets or Approved Extended Budget (subject to ABOC's right to object to

any professional seeking an award of professional fees and disbursements on any basis,

including, without limitation, that the fees and disbursements, notwithstanding that they are in set

forth in the Budgets or any Approved Extended Budgets are excessive or otherwise

unreasonable).  In addition and as further Adequate Protection of ABOC's interests, the Cash

Collateral Debtors shall make payment of interest, fees and costs as set forth in the Budgets and

any Approved Extended Budgets (the "Adequate Protection Interest Claim"), subject to the

Debtors' and the Committee's right to review fee statements with respect to fees charged by

ABOC's professionals, and provided that in the event the Court determines by a final order that

any payment made under this paragraph was improper as a result of the application of section

506(b) of the Bankruptcy Code, then such payment shall be subject to total or partial application

to principal (as the Court may determine).

      (12)   As further adequate protection, the Cash Collateral Debtors propose that

all debtor and debtor-in-possession accounts for each of the Cash Collateral Debtors shall be

maintained at ABOC (individually, an "Adequate Protective Account" and collectively the

"Adequate Protection Accounts"), with the exception that each Cash Collateral Debtor will

maintain a payroll account at Hinsdale Bank & Trust (individually, a "Payroll Account" and

collectively, the "Payroll Accounts"), with the Payroll Accounts funded from the Adequate

Protection Accounts only to the extent needed to fund the Cash Collateral Debtors' payrolls as

set forth in the Budgets and any Approved Extended Budgets. The Cash Collateral Debtors agree not to transfer any funds into the Payroll Accounts other than amounts needed to cover payrolls on not less than a weekly basis. The Adequate Protection Liens, the Adequate Protection Priority Claim, the Adequate Protection Accounts and the Adequate Protection Interest Claim shall, to the fullest extent permitted by applicable law, secure the payment of an amount equal to any diminution in the value of ABOC's interests in the Cash Collateral and the Collateral from and after the Petition Date (the aggregate amount of such diminution, the "Adequate Protection Obligations") including, without limitation, any diminution resulting from: (i) the Cash Collateral Debtors' use of the Collateral, including their use of the Cash Collateral, and (ii) the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code. ABOC and the Cash Collateral Debtors reserve all rights with respect to whether ABOC's Collateral renders it oversecured.

E.     Good cause has been shown for entry of the Final Order and this Agreed Amended Final Order. In particular, the authorization granted herein for the Cash Collateral Debtors to continue using Cash Collateral is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of the Final Order and this Agreed Amended Final Order was and remains in the best interest of the Debtors, their estates and creditors. The terms of the Cash Collateral Debtors' use of Cash Collateral pursuant to the Final Order and this Agreed Amended Final Order were and remain fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The Cash Collateral Debtors and ABOC have negotiated the terms and conditions of the Final Order and this Agreed

Amended Final Order (including the use of Cash Collateral pursuant hereto) in good faith and at arm's-length.

F.    Based on the foregoing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    The Motion was approved on a final basis on the terms and conditions set forth in the Final Order.  Any objections to the terms of the Final Order that had not been previously resolved or withdrawn were overruled on the merits.  The Final Order became effective and binding upon all parties in interest immediately upon its entry.  Upon entry of this Agreed Amended Final Order, the terms and conditions set forth herein are approved on a final basis, *nunc pro tunc* to December 17, 2011 (the "Effective Date"), unless otherwise set forth herein. Any objections to the terms of the Agreed Amended Final Order that have not been previously resolved or withdrawn are overruled on the merits.

2.    Subject to the occurrence of a Cash Collateral Termination Event (as defined in paragraph 10 below), the Cash Collateral Debtors are hereby authorized to use the Cash Collateral through the close of business on the last day of the Budget Period (defined below) provided that such use shall be solely in accordance with the Budget or the Approved Extended Budgets (defined below) and the other terms and conditions set forth herein.  Subject to the terms and conditions set forth in this Final Order, the Cash Collateral Debtors may use the Cash Collateral (a) to fund their general corporate and working capital requirements (including certain administrative expenses in the chapter 11 cases, in each case in accordance with the terms of the Final Order and this Agreed Amended Final Order), and (b) to pay to ABOC interest, fees and costs as set forth in the Budgets and any Approved Extended Budgets.

3.    Attached hereto as Exhibit A and incorporated herein are budgets (each a "Budget", and collectively, the "Budgets") for each of the Cash Collateral Debtors for the 13

week period commencing on September 23, 2011 and ending at close of business on December 16, 2011 (the "Initial Budget Period"). No later than six (6) weeks prior to the end of the Initial Budget Period, and no later than four (4) weeks prior to the end of each successive 13-week period, the Debtors shall provide ABOC and the Committee with a proposed, updated 13-week budget (each such proposed budget, a "Proposed Extended Budget") for the succeeding 13 week period (the "Proposed Extended Budget Period"). Following ABOC's and the Committee's written approval of any Proposed Extended Budget or entry of an order by the Bankruptcy Court authorizing the expenditures pursuant to the Proposed Extended Budget, the Proposed Extended Budgets shall become effective as approved extended budgets (the "Approved Extended Budgets"), and the Cash Collateral Debtors will be authorized to use cash collateral in accordance with the terms of the Final Order, and as of the Effective Date this Agreed Amended Final Order, through the close of business on the final day of each Approved Extended Budget. In the event ABOC does not provide written approval of any Proposed Extended Budget or the Cash Collateral Debtors do not secure authority from the Bankruptcy Court to use the Cash Collateral pursuant to a Proposed Extended Budget prior to the termination of the Initial Budget Period or any succeeding 13 week Proposed Extended Budget Period, the Cash Collateral Debtors' right to use Cash Collateral shall terminate on the close of business on December 21, 2011, or on the Friday of the final week of any Approved Extended Budget period. Attached hereto as Exhibit B are the Approved Extended Budgets for the 13-week period commending on December 17, 2011, and ending at the close of business on March 16, 2012. Attached hereto as Exhibit C are the Approved Extended Budgets for the 13-week period commencing on March 17, 2012, and ending at the close of business on June 15, 2012.

4.     The Budgets and any Approved Extended Budgets shall reflect on a line-item basis the Cash Collateral Debtors anticipated cash receipts and expenditures on a weekly basis and all necessary and required expenses which they expect to incur during each week of the Budget Period and any Approved Extended Budget period.  On a weekly basis on the commencement of the Budget Period through the last day of each week of the Budget Period and any period covered by an Approved Extended Budget, (a) the aggregate actual disbursements by the Cash Collateral Debtors measured on a weekly basis shall be no greater than 110% of the aggregate amount of projected disbursements for such period as set forth in the Budget or any Approved Extended Budgets; and (b) the aggregate actual cash receipts collected by the Cash Collateral Debtors measured weekly on a cumulative monthly basis for the Budget Period then-existing and any period covered by an Approved Extended Budgets shall be no less than 90% of the aggregate amount of projected cash receipts for such period as set forth in the Budget and any Approved Extended Budgets.   In the event that expenses for a particular week come in under the amount set forth in the Budget or any Approved Extended Budgets, such amounts shall roll forward and shall be available in future weeks for the then-existing Budget Period or any period covered by an Approved Extended Budget, and may be used by the cash Collateral Debtors to off-set any overages for future weeks of the then-existing Budget Period and any period covered by an Approved Extended Budget.  For purposes of clarity, the expense roll forwards for any Budget Period (or Approved Extended Budget period) may not be rolled forward beyond each such Budget Period or Approved Extended Budget period.  Beginning on the Effective Date, the preceding three sentences (beginning with the phrase "On a weekly basis. . .") shall be deleted and replaced in their entirety with the following:

> The Cash Collateral Debtors are ordered to maintain all debtor and debtor-in-possession accounts at ABOC, as the Adequate

Protection Accounts described in paragraph D(12) of the Findings and Conclusions above, with the exception of the Payroll Accounts into which the Cash Collateral Debtors shall only transfer the amounts needed to cover payrolls. At all times the "aggregate" collected cash (the "Operating Cash") in the Adequate Protection Accounts shall be no less than $4,000,000 (the "Operating Cash Floor"). Reference to "aggregate" in the context of this paragraph 4 shall mean the collected cash in all Adequate Protection Accounts maintained by the Cash Collateral Debtors at ABOC. ABOC shall have the right, and is hereby authorized without further order of the Court, to suspend disbursements from the Adequate Protection Accounts immediately, and to return unpaid items presented for payment, in the event honoring such items would cause the aggregate collected cash in the Adequate Protection Accounts to fall below the Operating Cash Floor (an "Operating Cash Default"). Disbursements from the Adequate Protection Accounts may, at the sole discretion of ABOC and without further order of the Court, remain suspended until such time as the Operating Cash Default is cured by the Cash Collateral Debtors, as a result of deposits being made by or on behalf of the Cash Collateral Debtors so that the aggregate collected cash in the Adequate Protection Accounts will be at or above the Operating Cash Floor following payment of all pending items presented to ABOC for payment. Notwithstanding the foregoing, in the event ABOC suspends disbursements from the Adequate Protection Accounts as a result of an Operating Cash Default, the Cash Collateral Debtors may apply to the Court for relief on no less than seven days notice, subject to the Court's availability, provided, however, that the Cash Collateral Debtors will follow the customary three-day non-emergency motion practice for interim relief pending a final hearing in the event the above-captioned cases are transferred to the Bankruptcy Court for the Northern District of Illinois. ABOC is not required and shall not honor any item that would create an overdraft in an individual Adequate Protection Account, regardless of the aggregate collected amount of Operating Cash in the Adequate Protection Accounts.

5.    The Cash Collateral Debtors shall provide to ABOC, and professionals for the Committee, so as to actually be received by 5 p.m. (EDT or EST, as applicable) of each Wednesday of each calendar week, weekly line-by-line variance reports (in form and scope reasonably acceptable to ABOC and the Committee) for the immediately preceding weekly period from the Petition Date to each such report date, comparing actual cash receipts and actual

cash disbursements to cash receipts and cash disbursements forecasted in the Budget and any Approved Extended Budgets for such period and showing on a line-by-line basis any variance to the corresponding line-item of the Budget together with an explanation for such variance.

6.      The Cash Collateral Debtors shall not make any payments or other disbursements other than the itemized projected disbursements set forth in the Budgets without the prior written consent of ABOC and the Committee and upon prior notice to the Committee, including, without limitation, any payments to related entities.  The Cash Collateral Debtors shall not enter into or provide any loans to related entities, nor accept any loan proceeds from any entity or person without the prior written consent of ABOC, and upon prior notice to the Committee.

7.      Failure by the Cash Collateral Debtors to comply with any of the terms of the Final Order, including, without limitation, compliance with the Budgets, any Approved Extended Budgets and the reporting obligations set forth in this Final Order shall constitute an Event of Default under the Final Order.  The Budgets shall not be modified without the prior written consent of ABOC and upon prior notice to the Committee.  Beginning on the Effective Date, the first sentence of this paragraph shall be deleted and replaced in its entirety with the following:

> Failure by the Cash Collateral Debtors to comply with any of the terms of this Agreed Amended Final Order, including, without limitation, the reporting obligations set forth in this Agreed Amended Final Order shall constitute an Event of Default under this Agreed Amended Final Order.

8.      The Cash Collateral Debtors shall also provide ABOC and the Committee with accounts receivable aging reports (containing at minimum, domestic receivables, foreign receivables and intercompany receivables) on a weekly basis, bi-monthly Borrowing Base Certificates no later than five business days after the 15th and last business day of each month (co-signed by the Debtors and their Chief Restructuring Officer, or his designee), monthly financial statements (balance sheet and profit and loss statements), monthly Borrowing Base

Revised Agreed Amended Final CCO with ABOC (3-16-12)

Certificates (co-signed by the Debtors and their Chief Restructuring Officer, or his designee) and all other reports and documentation as required under the Loan Documents. The Cash Collateral Debtors shall also provide the Debtors and the Committee with a weekly summary of intercompany activity, no later than the close of business on each Thursday for the week prior thereto, and ABOC shall have the right to receive all back up documentation for a random sampling of such transactions within three business days of making a written request for such documentation. The Cash Collateral Debtors shall also provide ABOC with such additional financial reports as may be reasonably requested from time to time, which reports shall also be provided concurrently to the professionals for the Committee. Beginning on the Effective Date, the first sentence of this paragraph shall be deleted and replaced in its entirety with the following:

> The Cash Collateral Debtors shall also provide ABOC and the Committee with: (a) accounts receivable aging reports (containing at minimum, domestic receivables, foreign receivables and intercompany receivables) on a weekly basis, no later than Wednesday of each week for the preceding week's report, (b) bi-monthly certified Borrowing Base Compliance Certificates co-signed by an authorized officer of each Cash Collateral Debtor and their Chief Restructuring Officer or his designee, no later than: (i) the 26th day of the month, or the first business day immediately following the 26th day of the month for the first fifteen (15) days of that month; and (ii) the twelfth (12th) day of the month, or the first business day immediately following the twelfth (12th) day of the month, for the period covering the sixteenth (16th) day through the end of the immediately preceding calendar month, (c) monthly financial statements (balance sheet and profit and loss statements) which shall be transmitted simultaneously to counsel for ABOC and to the Committee (whether to Committee counsel or the Committee's Financial Advisors), and in no event later than sixty (60) days after the end of the month, and (d) all other reports and documentation as required under the Loan Documents.

9.    The Cash Collateral Debtors shall not make transfers to any other debtor entity or any non-debtor affiliated entity other than as set forth in the Budgets and any Approved

Extended Budgets.  Further, notwithstanding anything to the contrary in this or any other order

of the Court, including any orders entered by the Court on the first day of this case,[4] the Cash

Collateral Debtors will not make any transfers other than those set forth in the Budgets.  In the

event that ABOC and the Committee consent, in writing, to the use of its Cash Collateral in a

manner or amount which does not conform to the Budgets (such use of Cash Collateral, a "Non-

Conforming Use"), the Cash Collateral Debtors shall be authorized pursuant to this Order to

expend Cash Collateral for such Non-Conforming Use without further Court approval.

10.    The Cash Collateral Debtors' authority to use Cash Collateral in accordance with

this Final Order, the Budgets and any Approved Extended Budgets shall terminate upon the

earliest to occur of (a) the close of business on (i) the conclusion of the Initial Budget Period if

---

[4]      Agreed Interim Order Authorizing Use of Cash Collateral In Which Oakbrook Financial Asserts an Interest and Scheduling Final Hearing dated 8/16/2011 [D.I. 30];

Interim Order Authorizing Use of Cash Collateral In Which Amalgamated Bank of Chicago, Burr Ridge Bank & Trust, And Inland Bank Assert Security Interests and Scheduling Final Hearing dated 8/16/2011 [D.I. 31];

Order (A) Authorizing the Debtors to Pay Prepetition (I) Sales, Use, and Franchise Taxes, and (II) Tolls, Fees, Licenses, and Other Similar Charges and Assessments, and (B) Authorizing Applicable Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Presented for Payment Related Thereto dated 8/16/2011 [D.I. 32];

Interim Order Pursuant to Sections 105 and 366 of the Bankruptcy Code (I) Determining Utility Providers are Adequately Assured of Future Performance, (II) Enjoining Utility Providers from Altering, Refusing, Discontinuing, or Interfering with Utility Service, and (III) Establishing Procedures for Determining Requests for Additional Adequate Assurance dated 8/16/2011 [D.I. 33];

Order (A) Authorizing but not Directing the Debtors to Pay Certain Prepetition Wages, Benefits and Other Employee-Related Obligations; (B) Authorizing but not Directing the Debtors to Continue Certain Postpetition Wage and Benefit Programs; (C) Authorizing but not Directing the Debtors to Continue to Make Deductions from Employees' Paychecks; and (D) Authorizing Banks and Financial Institutions to Pay All Checks and Electronic Payment Requests Relating to the Foregoing dated 8/16/2011 [D.I. 34];

Interim Order (A) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors and (B) Approving Procedures Related Thereto dated 8/16/2011 [D.I. 35];

Order Authorizing the Debtors to Continue to Use Existing Cash Management System dated 8/16/2011 [D.I. 36]

(collectively, the "First Day Orders").

an Approved Extended Budget has not been approved; or (ii) the close of business on the final day of an Approved Extended Budget if a successive Approved Extended Budget has not been approved; or (b) occurrence and continuation of an Event of Default under this Final Order (a "Cash Collateral Termination Event") following a period of 5 business days after the actual receipt (including, without limitation, *via* email) of written notice of an Event of Default hereunder, by counsel to Debtors and counsel to the Committee (collectively, the "Cure Period"), and such Event of Default has not been cured, and a determination by ABOC, by written notice delivered by email to counsel for the Debtors and counsel for the Committee, to terminate the use of Cash Collateral pursuant to the terms of the Final Order and this Agreed Amended Final Order; provided, however, that the Cash Collateral Debtors' right to seek continued use of Cash Collateral after the occurrence of a Cash Collateral Termination Event pursuant to further Court order and the Bankruptcy Code, and ABOC's and the Committee's right to oppose any such request, are expressly reserved.  Further, in the event of a Cash Collateral Termination Event, ABOC may seek to modify the automatic stay pursuant to Bankruptcy Code § 362 to protect its interests in its Collateral on 5 days' notice to the Debtors, the Committee and its counsel, as well as all parties entitled to receive notice of such a motion in the chapter 11 cases.  Upon entry of this Agreed Amended Final Order, ABOC acknowledges that any prior Cash Collateral Termination Events have been waived.

11.    The occurrence of any of the events set forth in clauses (a) through (j) below shall constitute an immediate Event of Default under the Final Order and this Agreed Amended Final Order:  (a) failure by the Cash Collateral Debtors to remit promptly payment of interest, fees, costs to ABOC as set forth in the Budgets; (b) failure by the Cash Collateral Debtors to comply with any provision of this Final Order, including, without limitation, the Budget variance

provisions and reporting provisions set forth in paragraph 3 hereof; (c) the Debtors shall take any

action in the chapter 11 cases that is adverse to ABOC's interests in its Collateral; (d) either of

the chapter 11 cases shall be dismissed or converted to a chapter 7 case, or a chapter 11 trustee

with plenary powers, a responsible officer, or an examiner with enlarged powers relating to the

operation of the Debtors' business shall be appointed in any of the Debtors' chapter 11 cases; (e)

an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise

modifying this Final Order in a manner that is materially adverse to ABOC and without the

consent of ABOC; (f) except as provided herein, the filing by the Debtors, the Committee or any

alleged creditor of any motion, application or adversary proceeding challenging the validity,

enforceability, perfection or priority of the liens securing the Prepetition Obligations or asserting

any claim or cause of action against and/or with respect to the Prepetition Obligations, the liens

securing the Prepetition Obligations, or ABOC or any of its affiliates, agents, attorneys, financial

advisors, officers, managers, directors or employees (or if the Debtors support any such motion,

application or adversary proceeding commenced by any third party) in respect of or arising out

of the Prepetition Obligations; (g) Dan Scouler and Scouler and Company shall cease to be the

Chief Restructuring Officer of the Debtors; (h) either of the Cash Collateral Debtors' failure to

maintain the Borrowing Base required under the Loan Documents (excluding the real estate

pledged as eligible collateral), by either maintaining sufficient eligible Collateral or if unable to

maintain such sufficient Collateral, making all necessary payments to ABOC to reduce the

Amount Outstanding so as to be in compliance with the Borrowing Base requirements set forth

in the Loan Documents (excluding the real estate pledged as eligible collateral) based upon the

remaining available Collateral, and ABOC shall have the right to freeze funds sufficient to

reduce the Amount Outstanding so as to be in compliance with the Borrowing Base requirements

held in any of the Debtors' accounts at ABOC (the "BB Cure Funds") for the purpose of doing

so, and if the Debtors do not cure this default within the Cure Period, apply the BB Cure Funds

to the Amount Outstanding to satisfy the Cash Collateral Debtors' Borrowing Base requirements;

(i) any intentional misrepresentation of a material fact made after the Petition Date shall be made

by the Debtors or any of their agents to ABOC about (1) the financial condition of the Debtors,

(2) the nature, extent, location or quality of any of the Collateral, or (3) the disposition or use of

any of the Collateral, including the Cash Collateral; or (j) either of the Debtors shall file, or

support the filing of, a motion seeking the authority to abandon any of the Collateral pursuant to

section 554 of the Bankruptcy Code or otherwise without the consent of ABOC.  Beginning on

the Effective Date, clauses (b), (e), (h) and (j) and  of this paragraph shall be replaced in their

entirety with the following:

> (b) failure by the Cash Collateral Debtors to comply with any provision of this Agreed Amended Final Order, including without limitation, all reporting requirements set forth herein, and the requirements with respect to maintenance of the Adequate Protection Accounts and the Operating Cash Floor set forth in paragraph 4 hereof;
>
> (e) an order shall be entered reversing, amending, supplementing, staying, vacating or otherwise modifying the Final Order (other than this Agreed Amended Final Order) or this Agreed Amended Final Order in a manner that is materially adverse to ABOC and without the consent of ABOC;
>
> (h) the "Combined Total Eligible Collateral," as set forth in any bi-monthly certified Borrowing Base Compliance Certificate required under the Loan Documents and paragraph 8 of this Agreed Amended Final Order (a "Borrowing Base Certificate"), excluding any amount attributed to purported "Real Estate Equity," is less than the "Present Promissory Note Balance (Principal Outstanding)," (hereinafter the "Loan Balance") on such Borrowing Base Certificate (a "Borrowing Base Default").  In addition to all of its rights under the Loan Documents and this Agreed Amended Final Order, ABOC shall have the right, in its sole discretion, and hereby authorized without further order of the Court, to immediately freeze funds held in any of the Adequate

Protection Accounts, equal to the difference between the Loan Balance and the "Combined Total Eligible Collateral" on such Borrowing Base Certificate, excluding any amount attributed to purported "Real Estate Equity," (the "Borrowing Base Cure Funds"). ABOC shall have the right, in its sole discretion, and is hereby authorized without further order of the Court, to apply the Borrowing Base Cure Funds to reduce the Loan Balance unless the Cash Collateral Debtors cure the Borrowing Base Default by transferring funds equal to the amount of the Borrowing Base Cure Funds to ABOC within a period of five (5) business days after ABOC has frozen the Borrowing Base Cure Funds. Should such a transfer occur, ABOC shall have the right, in its sole discretion, and is hereby authorized without further order of the Court to apply such transferred funds to reduce the Loan Balance.

(j) either of the Cash Collateral Debtors shall file, or support the filing of, a motion seeking the authority to abandon any of the Collateral pursuant to section 554 of the Bankruptcy Code or otherwise without the consent of ABOC.

12.    As adequate protection for the payment of the Adequate Protection Obligations, ABOC shall be granted the Adequate Protection Liens, the Adequate Protection Priority Claim, the Adequate Protection Accounts and the Adequate Protection Interest Claim (all as defined in paragraph D above). The Adequate Protection Liens shall only be (a) junior in priority to any valid, properly perfected, enforceable and non-avoidable prepetition liens of the Priority Equipment Lenders on assets of the Cash Collateral Debtors other than the Prepetition ABOC Liens, but only to the extent such liens are senior in priority to the Prepetition ABOC Liens as of the Petition Date, and (b) senior to any other liens. As additional adequate protection for ABOC, the Debtors shall be prohibited from incurring additional indebtedness having priority claims or liens equal to or senior in priority to the Prepetition Obligations, the Prepetition ABOC Liens or the Adequate Protection Liens. Without the prior written consent of ABOC, no portion of the Collateral (including any Cash Collateral) shall (a) except as expressly permitted under the terms of this Final Order, the approved Budgets and any Approved Extended Budgets, be used by the Cash Collateral Debtors to satisfy chapter 11 administrative expenses or operating expenses, or

(b) be distributed by the Cash Collateral Debtors in the form of an intercompany loan, or any other distribution.

13.    Nothing herein shall preclude ABOC from (a) seeking to terminate the Cash Collateral Debtors' use of Cash Collateral, upon the occurrence of an Event of Default in accordance with terms hereof or otherwise, (b) seeking the payment of all unpaid interest (including default rate interest) and fees under the Loan Documents, or (c) seeking to modify the automatic stay in the Event of a Default or otherwise.    Furthermore, nothing herein shall be construed as an acknowledgment or stipulation by ABOC that its interests in its Collateral are adequately protected.

14.    Subject to the Committee's lien challenge rights, the Debtors expressly acknowledge ABOC's right to credit bid the Prepetition Obligations in any sale of all or part of the Collateral pursuant to sections 363 or 365 of the Bankruptcy Code.    Beginning on the Effective Date, this paragraph shall be deleted and replaced in its entirety with the following:

> Subject to the Committee's lien challenge rights, the Debtors and the Committee expressly acknowledge ABOC's right to credit bid the Prepetition Obligations in any sale of all or part of the Collateral pursuant to sections 363, 365, 1123 and 1129 of the Bankruptcy Code.

15.    The Adequate Protection Liens, Adequate Protection Priority Claim, Adequate Protection Accounts and the Adequate Protection Interest Claims shall not be (a) subject or subordinated to, or made *pari passu* with, any lien that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (b) subject or subordinated to, or made *pari passu* with, any other lien or security interest, whether under sections 363 or 364 of the Bankruptcy Code or otherwise, unless provided for in the Final Order and this Agreed Amended Final Order.    The Adequate Protection Liens shall not be subject to challenge except with respect to the Committee's right to investigate the Prepetition ABOC liens set forth in

paragraph 18, and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the Petition Date without any further action by the Debtors or ABOC, and without the necessity of execution by the Cash Collateral Debtors, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, fixture filings, filings with the U.S. Patent and Trademark Office, or other documents. Failure by the Debtors to execute any documentation relating to the Adequate Protection Liens shall in no way affect the validity, enforceability, perfection or priority thereof.

16.     The provisions of the Final Order and this Agreed Amended Final Order shall be binding upon and inure to the benefit of ABOC, the Debtors, and their respective successors and assigns (including, without limitation, any trustee or other fiduciary hereafter appointed for or on behalf of any Debtor's estate or property). The provisions of the Final Order, this Agreed Amended Final Order, and any actions taken pursuant thereto (a) shall survive the entry of any order: (i) confirming any plan of reorganization in these chapter 11 cases; (ii) converting the chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iii) dismissing the chapter 11 cases; and (b) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Final Order shall maintain their priority as provided by this Final Order until all of the Adequate Protection Obligations are indefeasibly paid in full and discharged in accordance with the terms of the Final Order and this Agreed Amended Final Order.

17.     If any or all of the provisions of the Final Order or this Agreed Amended Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (a) the validity of any Adequate Protection Obligations incurred prior to the actual receipt by ABOC of written notice of the effective date of such reversal, modification,

vacatur or stay, or (b) the validity or enforceability of any claim, lien, security interest or priority authorized or created hereby with respect to the Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacatur or stay, any use of Cash Collateral or incurrence of Adequate Protection Obligations by the Cash Collateral Debtors prior to the actual receipt by ABOC of written notice of the effective date of such reversal, modification, vacatur or stay, shall be governed in all respects by the provisions of the Final Order and this Agreed Amended Final Order.

18. The stipulations and admissions contained in the Final Order and Agreed Amended Final Order, including, without limitation, in recital paragraphs D(1) through D(10) hereof, shall (a) be binding on the Cash Collateral Debtors under all circumstances and (b) be binding upon the Debtors and all other parties in interest unless, and solely to the extent that, (i) the Committee (which is hereby granted standing to pursue the following actions) or another party in interest with requisite standing, no later than 90 days following the entry of this Order, has timely filed an adversary proceeding or contested matter challenging the amount, validity, or enforceability of the Prepetition Obligations, or the perfection or priority of the Prepetition ABOC Liens on the Collateral, or otherwise asserting any Avoidance Actions or any other claims or causes of action on behalf of the Debtors' estates against ABOC or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or non-bankruptcy law, and (ii) the Court enters a final order in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, re-characterization, defense or avoidance, for all purposes in the chapter 11 cases

and any subsequent chapter 7 case, (y) the Prepetition ABOC Liens on the Collateral shall be

deemed to have been, as of the Petition Date, and to be, legal, valid, binding, and perfected first

priority liens not subject to defense, counterclaim, re-characterization, subordination or

avoidance, and (z) the Prepetition Obligations and the Prepetition ABOC Liens on the Collateral

shall not be subject to any other or further challenge by any party-in-interest, and all such

parties-in-interest (including, without limitation, any estate representative or trustee appointed or

elected for Debtors' estates) shall be enjoined from seeking to assert any such challenge.  If any

such adversary proceeding or contested matter is timely filed, the stipulations and admissions

contained herein shall nonetheless remain binding and preclusive on all parties-in-interest, except

with respect to any such findings and admissions that are successfully challenged in such

adversary proceeding or contested matter.  Beginning on the Effective Date, this first sentence of

this paragraph shall be replaced in its entirety with the following:

> As of January 4, 2012, the stipulations and admissions contained in
> the Final Order and this Agreed Amended Final Order, including,
> without limitation, in recital paragraphs D(1) through D(10)
> hereof, are (a) binding on the Cash Collateral Debtors, upon the
> Debtors, and upon all other parties in interest, other than the
> Committee and with respect to the Committee shall (b) be binding
> unless, and solely to the extent that on or before the close of
> business on March 1, 2012, (i) the Committee (which is hereby
> granted standing to pursue the following actions) has filed an
> adversary proceeding or contested matter challenging the amount,
> validity, or enforceability of the Prepetition Obligations, or the
> perfection or priority of the Prepetition ABOC Liens on the
> Collateral, or otherwise asserting any Avoidance Actions or any
> other claims or causes of action on behalf of the Debtors' estates
> against ABOC or any of its affiliates, agents, attorneys, financial
> advisors, officers, managers, directors or employees under the
> Bankruptcy Code or non-bankruptcy law, and (ii) the Court enters
> a final order in favor of the plaintiff in any such timely filed
> adversary proceeding or contested matter.

Beginning on the Revised Order's Effective Date (as defined below); the first sentence of this

paragraph shall be replaced in its entirety with the following:

As of January 4, 2012, the stipulations and admissions contained in the Final Order and this Agreed Amended Final Order, including, without limitation, in recital paragraphs D(1) through D(10) hereof, (subject to the limitations with respect to the Unencumbered Assets and Other Assets incorporated in certain of the recital paragraphs herein), are (a) binding on the Cash Collateral Debtors, the Debtors, the Committee, and upon all other parties in interest, with the exception of any Claims and Defenses (defined herein) which may be asserted by the Committee only related to the Other Assets.    With respect to the Other Assets, the Committee's deadline to file an adversary proceeding or contested matter challenging the amount, validity, enforceability, perfection or priority of the Prepetition ABOC Liens on the Other Assets, or otherwise asserting any Avoidance Actions or any other claims or causes of action on behalf of the Debtors' estates against ABOC or any of its affiliates, agents, attorneys, financial advisors, officers, managers, directors or employees under the Bankruptcy Code or non-bankruptcy law (collectively, the "Claims and Defenses") with respect to the Other Assets only is hereby extended to the effective date of a plan that is confirmed by the Bankruptcy Court in these Chapter 11 Cases.

19.    This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Beginning on the Effective Date, this paragraph shall be replaced in its entirety with the following:

The Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.    The Agreed Amended Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to December 17, 2011.

20.    The Final Order and the Agreed Amended Final Order are hereby incorporated in their entirety into this Revised Agreed Amended Final Order; and the revisions to the Agreed Amended Final Order as set forth in this Revised Agreed Amended Final Order shall take effect and be fully enforceable *nunc pro tunc* to March 16, 2012 (the "Revised Order's Effective Date").

21.    This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

Chicago, Illinois
Dated: *April 3*, 2012

_____
United States Bankruptcy Judge

**EXHIBIT A**

**Fulfillment Xcellence, Inc.**

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Number | | | | | | | | | | | | | |
| Week ending Friday | 9/23/11 | 9/30/11 | 10/7/11 | 10/14/11 | 10/21/11 | 10/28/11 | 11/4/11 | 11/11/11 | 11/18/11 | 11/25/11 | 12/2/11 | 12/9/11 | 12/16/11 |
| Beginning Cash (Operational Acct. Only) | 2,596,257 | 2,748,923 | 2,806,125 | 2,579,512 | 2,273,550 | 2,047,133 | 1,606,876 | 1,634,362 | 1,719,241 | 1,846,593 | 1,926,957 | 1,887,613 | 1,868,852 |
| Receipts | 565,000 | 565,000 | 424,000 | 424,000 | 424,000 | 424,000 | 574,000 | 686,000 | 686,000 | 686,000 | 654,000 | 572,000 | 572,000 |
| Less Transfers to Postage Account (1) | | | | | | | | | | | | | |
| Intercompany Loan Receipt | | | | | | | | | | | | | |
| Intercompany Loan Payment | | | | | | | | | | | | | |
| Weekly cash inflows | 565,000 | 565,000 | 424,000 | 424,000 | 424,000 | 424,000 | 574,000 | 686,000 | 686,000 | 686,000 | 654,000 | 572,000 | 572,000 |
| Payroll | 0 | 48,579 | 0 | 61,579 | 0 | 48,579 | 0 | 48,579 | 0 | 48,579 | 0 | 48,579 | 0 |
| Insurance | 0 | 4,216 | 0 | 4,216 | 0 | 4,216 | 0 | 4,216 | 0 | 4,216 | 0 | 4,216 | 0 |
| Outside Services | 358,810 | 358,810 | 632,358 | 632,358 | 632,358 | 632,358 | 529,416 | 529,416 | 529,416 | 529,416 | 520,753 | 520,753 | 528,753 |
| Rent | | 2,768 | | | | 2,768 | | | | 2,768 | | | |
| Utilities | | 283 | | | | 283 | | | | 283 | | | |
| Telephone | | 3,277 | | | | 3,277 | | | | 3,277 | | | |
| Advertising | 689 | 689 | 1,214 | 1,214 | 1,214 | 1,234 | 1,016 | 1,016 | 1,016 | 1,016 | 999 | 999 | 999 |
| Legal Fees | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 |
| Repairs & Maintenance | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 |
| Vehicles | | | | 1,617 | | | | 1,617 | | | | | 1,617 |
| T & E | 2,663 | 2,663 | 4,693 | 4,693 | 4,693 | 4,693 | 3,929 | 3,929 | 3,929 | 3,929 | 3,864 | 3,864 | 3,864 |
| Insurance | | | | 9,135 | | | | 9,135 | | | | | 9,135 |
| Debt Service | | | | | | | | | | | | | |
| Sales Tax | | | | 3,000 | | | | 3,000 | | | | | 3,000 |
| Other | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 |
| Interest | | | 0 | | | | | 0 | | | | 0 | |
| Bank Fees | | | 196 | | | | | 196 | | | | 196 | |
| ABOC Fees | 47,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Total Operational Payments | 414,314 | 433,437 | 650,613 | 729,963 | 650,417 | 709,539 | 546,513 | 601,121 | 558,648 | 605,636 | 537,770 | 590,761 | 551,521 |
| Adjustments | | | | | | | | | | | | | |
| Ending Cash from Operations | 2,748,923 | 2,880,486 | 2,579,512 | 2,273,550 | 2,047,133 | 1,761,593 | 1,634,362 | 1,719,241 | 1,846,593 | 1,926,957 | 2,043,187 | 1,868,852 | 1,889,331 |
| **Bankruptcy Related Disbursements** | | | | | | | | | | | | | |
| Lead Counsel | | 25,701 | | | | 51,401 | | | | | 51,401 | | |
| Local Counsel | | 3,598 | | | | 3,598 | | | | | 3,598 | | |
| Debtor F/A | | 35,634 | | | | 51,401 | | | | | 51,401 | | |
| Claims Agent | | | | | | 8,567 | | | | | 8,567 | | |
| Other Professionals | | 8,567 | | | | 4,283 | | | | | | | |
| Creditor Counsel | | | | | | 17,134 | | | | | 17,134 | | |
| Creditor F/A | | | | | | 17,134 | | | | | 17,134 | | |
| Creditor Local Counsel | | | | | | 1,199 | | | | | 1,199 | | |
| Court/Trustee | | 857 | | | | | | | | | 5,140 | | |
| Total Bankruptcy Related Disbursements | 0 | 74,360 | 0 | 0 | 0 | 154,718 | 0 | 0 | 0 | 0 | 155,574 | 0 | 0 |
| Net Ending Cash | 2,748,923 | 2,806,125 | 2,579,512 | 2,273,550 | 2,047,133 | 1,606,876 | 1,634,362 | 1,719,241 | 1,846,593 | 1,926,957 | 1,887,613 | 1,868,852 | 1,889,331 |

(1) Money received in the Operating account from Customers for Postage, rather than received in the Postage account.

**Versatile Card Technology, Inc. (DG)**

| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week ending Friday | 9/23/11 | 9/30/11 | 10/7/11 | 10/14/11 | 10/21/11 | 10/28/11 | 11/4/11 | 11/11/11 | 11/18/11 | 11/25/11 | 12/2/11 | 12/9/11 | 12/16/11 |
| Beginning Cash (Operational Acct. Only) | 263,703 | 332,522 | 93,226 | 175,886 | 216,957 | 429,805 | 176,692 | 573,027 | 910,287 | 1,232,540 | 1,432,833 | 1,259,646 | 1,067,948 |
| Receipts | 921,000 | 921,000 | 926,000 | 926,000 | 926,000 | 926,000 | 915,000 | 906,000 | 906,000 | 906,000 | 834,000 | 656,000 | 656,000 |
| Intercompany Loan - In | | | | | | | | | | | | | |
| Intercompany Loan - Out | | | | | | | | | | | | | |
| Weekly cash inflows (smoothed) | 921,000 | 921,000 | 926,000 | 926,000 | 926,000 | 926,000 | 915,000 | 906,000 | 906,000 | 906,000 | 834,000 | 656,000 | 656,000 |
| Payroll | 114,949 | 173,426 | 114,949 | 173,426 | 114,949 | 173,426 | 114,949 | 173,426 | 114,949 | 173,426 | 114,949 | 173,426 | 114,949 |
| Royalties | 1,782 | 1,782 | 1,505 | 1,505 | 1,505 | 1,505 | 923 | 923 | 923 | 923 | 1,583 | 1,583 | 1,583 |
| Operating Supplies | 516,800 | 516,800 | 436,609 | 436,609 | 436,609 | 436,609 | 267,794 | 267,794 | 267,794 | 267,794 | 459,160 | 459,160 | 459,160 |
| Outside Services | 101,694 | 101,694 | 85,914 | 85,914 | 85,914 | 85,914 | 52,696 | 52,696 | 52,696 | 52,696 | 90,352 | 90,352 | 90,352 |
| Rent | | 79,017 | | | | | | | | 79,017 | | | |
| Lease Payments | 20,102 | 66,681 | | | 20,102 | | | | | 20,102 | 66,681 | | |
| Temporary Services | 1,362 | 1,362 | 1,150 | 1,150 | 1,150 | 1,150 | 706 | 706 | 706 | 706 | 1,210 | 1,210 | 1,210 |
| Freight | 15,742 | 15,742 | 13,299 | 13,299 | 13,299 | 13,299 | 8,157 | 8,157 | 8,157 | 8,157 | 13,986 | 13,986 | 13,986 |
| Computer Expense | | | | 6,183 | | | | | | 6,183 | | | 6,183 |
| T & E | | | | 23,157 | | | | | | 23,157 | | | 23,157 |
| Accounting Fees | 3,841 | | | | 3,841 | | | | | 3,841 | | | |
| Utilities | | 54,478 | | | | 54,478 | | | | 54,478 | | | |
| Telephone | | 9,058 | | | | 9,058 | | | | 9,058 | | | |
| Repair & Maintenance | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 |
| Advertising | 830 | 830 | 701 | 701 | 701 | 701 | 430 | 430 | 430 | 430 | 738 | 738 | 738 |
| Vehicles | | | | 8,417 | | | | | 8,417 | | | 8,417 | |
| Legal Fees | | | | 25,816 | | | | | 25,816 | | | 25,816 | |
| Office Expense | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 |
| Visa/MC Annual Fee | | | | 78,375 | | | | | 78,375 | | | 78,375 | |
| Insurance | | | | | | | | | | | | | |
| Other | 17,295 | 12,591 | 12,591 | 12,591 | 17,295 | 12,591 | 12,591 | 12,591 | 12,591 | 17,295 | 12,591 | 12,591 | 12,591 |
| Interest Expense | | | 40,107 | | | | 40,107 | | | | | 40,107 | |
| Bank Fees | | | 2,528 | | | | 2,528 | | | | | 2,528 | |
| AHOC Fees | 47,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 |
| Total Operational Payments | 852,181 | 1,051,244 | 727,140 | 884,930 | 713,152 | 952,215 | 518,665 | 568,740 | 583,746 | 705,702 | 779,034 | 847,698 | 820,069 |
| Adjustments | | | | | | | | | | | | | |
| Ending Cash from Operations | 332,522 | 202,278 | 292,086 | 216,957 | 429,805 | 403,590 | 573,027 | 910,287 | 1,232,540 | 1,432,833 | 1,487,799 | 1,067,948 | 903,879 |
| **Bankruptcy Related Expenses** | | | | | | | | | | | | | |
| Lead Counsel | | 37,691 | | | | 75,381 | | | | | 75,381 | | |
| Local Counsel | | 5,277 | | | | 5,277 | | | | | 5,277 | | |
| Debtor F/A | | 52,564 | | | | 75,381 | | | | | 75,381 | | |
| Claims Agent | | | | | | 12,564 | | | | | 12,564 | | |
| Other Professionals | | 12,564 | | | | 6,282 | | | | | | | |
| Creditor Counsel | | | | | | 25,127 | | | | | 25,127 | | |
| Creditor F/A | | | | | | 25,127 | | | | | 25,127 | | |
| Creditor Local Counsel | | | | | | 1,259 | | | | | 1,259 | | |
| Court/Trustee | | 1,256 | | | | | | | | | 7,538 | | |
| Pre-Petition Critical Vendor Payment | | | 116,200 | | | | | | | | | | |
| Total Bankruptcy Related Expenses | 0 | 109,052 | 116,200 | 0 | 0 | 226,898 | 0 | 0 | 0 | 0 | 228,154 | 0 | 0 |
| Net Ending Cash | 332,522 | 93,226 | 175,886 | 216,957 | 429,805 | 176,692 | 573,027 | 910,287 | 1,232,540 | 1,432,833 | 1,259,646 | 1,067,948 | 903,879 |

**EXHIBIT B**

**Fulfillment Xcellence, Inc.**

| | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week ending Friday | 12/23/11 | 12/30/11 | 1/6/12 | 1/13/12 | 1/20/12 | 1/27/12 | 2/3/12 | 2/10/12 | 2/17/12 | 2/24/12 | 3/2/12 | 3/9/12 | 3/16/12 | |
| Beginning Cash (Operational Acct. Only) | $4,505,567.00 | 4,470,002 | 4,262,810 | 4,305,622 | 4,100,809 | 4,131,183 | 4,224,658 | 4,224,658 | 4,158,530 | 4,185,904 | 4,253,504 | 4,061,698 | 4,135,626 | |
| Receipts | | | | | | | | | | | | | | |
| Less Transfers to Postage Account (1) | 572,000 | 572,000 | 595,000 | 599,000 | 599,000 | 599,000 | 599,000 | 599,000 | 599,000 | 450,000 | 450,000 | 450,000 | 450,000 | |
| Intercompany Loan Receipt | | | | | | | | | | | | | | |
| Intercompany Loan Payment | | | | | | | | | | | | | | |
| Weekly cash inflows | 572,000 | 572,000 | 595,000 | 599,000 | 599,000 | 599,000 | 599,000 | 599,000 | 599,000 | 450,000 | 450,000 | 450,000 | 450,000 | |
| Payroll | 56,079 | 0 | 0 | 0 | 56,079 | 0 | 48,579 | 0 | 56,079 | 0 | 48,579 | 0 | 56,079 | 370,053 |
| Insurance | 4,216 | | 48,579 | | 4,216 | | 4,216 | | 4,216 | | 4,216 | | 4,216 | 29,511 |
| Outside Services | 520,753 | 520,753 | 4,216 | 56,079 | 473,125 | 473,125 | 473,125 | 473,125 | 473,125 | 350,000 | 350,000 | 350,000 | 350,000 | 5,753,382 |
| Rent | | | 473,125 | 4,216 | | 2,768 | | | | 2,768 | | | | 8,303 |
| Utilities | | 283 | | 473,125 | | 283 | | | | 283 | | | | 850 |
| Telephone | | 3,277 | | | | 3,277 | | | | 3,277 | | | | 9,831 |
| Advertising | 999 | 999 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 11,987 |
| Legal Fees | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 25,000 |
| Repairs & Maintenance | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 3,338 |
| Vehicles | | | | 1,617 | | | | | | | | | | 1,617 |
| T & E | 3,864 | 3,864 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 46,349 |
| Debt Service | | | | 9,135 | 9,135 | | | | 9,135 | | | | 9,135 | 27,404 |
| Insurance | | | | | | | | | | | | | | 0 |
| Sales Tax | | | | 3,000 | | | | | 3,000 | | | | 3,000 | 9,000 |
| Other | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 32,150 |
| Interest | | | | | | | | | | | | | | 0 |
| Bank Fees | | | 196 | | | | 196 | | | | 196 | | 588 |
| ABOC Fees | | | | | | | | | | | | | | 221,000 |
| Principal Paydown | | | | 300,000 | | | | | | | | | | 300,000 |
| Total Operational Payments | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 6,850,361 |
| Adjustments | 607,565 | 553,598 | 552,188 | 803,813 | 568,626 | 505,523 | 552,188 | 491,197 | 571,626 | 382,400 | 429,061 | 376,072 | 448,501 | |
| Ending Cash from Operations | 4,470,002 | 4,488,404 | 4,305,622 | 4,100,809 | 4,131,183 | 4,224,658 | 4,271,470 | 4,158,530 | 4,185,904 | 4,253,504 | 4,274,441 | 4,135,626 | 4,137,125 | |
| Bankruptcy Related Disbursements | | | | | | | | | | | | | | |
| Lead Counsel | | 68,535 | | | | | | | | | 68,535 | | 68,535 | 205,605 |
| Local Counsel | | 12,850 | | | | | | | | | 12,850 | | 12,850 | 38,551 |
| F/A | | 68,535 | | | | | | | | | 68,535 | | 68,535 | 205,605 |
| Claims Agent | | | | | | 8,567 | | | | | 8,567 | | | 17,134 |
| Transaction Advisors | | 8,567 | | | | 8,567 | | | | | 8,567 | | | 25,701 |
| Accountants | | 21,417 | | | | 0 | | | | | | | | 21,417 |
| Misc Professionals | | - | | | | 0 | | | | | - | | | 0 |
| Creditor Counsel | | 22,845 | | | | 22,845 | | | | | 22,845 | | 22,845 | 68,535 |
| Creditor F/A | | 22,845 | | | | 22,845 | | | | | 22,845 | | 22,845 | 68,535 |
| Creditor Local Counsel | | 4,283 | | | | 4,283 | | | | | 4,283 | | 4,283 | 12,850 |
| Court/Trustee | | | | | | 5,140 | | | | | 5,140 | | | 10,280 |
| Total Bankruptcy Related Disbursements | 0 | 225,594 | 0 | 0 | 0 | 212,744 | 0 | 0 | 0 | 0 | 212,744 | 0 | 212,744 | |
| Net Ending Cash | 4,470,002 | 4,262,810 | 4,305,622 | 4,100,809 | 4,131,183 | 4,224,658 | 4,058,727 | 4,158,530 | 4,185,904 | 4,253,504 | 4,061,698 | 4,135,626 | 4,137,125 | |

**Versatile Card Technology, Inc. (DG)**

| | | | | | | | | | | | | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week since inception of Case | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | |
| Week Number | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | |
| Week ending Friday | 12/23/11 | 12/30/11 | 1/6/12 | 1/13/12 | 1/20/12 | 1/27/12 | 2/3/12 | 2/10/12 | 2/17/12 | 2/24/12 | 3/2/12 | 3/9/12 | 3/16/12 | |
| | | | | | | | | | | | | | | |
| Beginning Cash (Operational Acc) | 1,956,169 | 1,990,927 | 1,724,488 | 1,775,928 | 1,894,248 | 1,808,437 | 1,690,335 | 1,550,838 | 1,485,898 | 1,485,156 | 1,391,795 | 1,074,478 | 1,207,918 | |
| | | | | | | | | | | | | | | |
| Receipts | | | | | | | | | | | | | | |
| Intercompany Loan - In | | | | | | | | | | | | | | |
| Intercompany Loan - Out | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Weekly cash inflows (smoothed) | 656,000 | 656,000 | 564,000 | 564,000 | 564,000 | 564,000 | 577,000 | 595,000 | 595,000 | 595,000 | 594,000 | 592,000 | 592,000 | 7,708,000 |
| | | | | | | | | | | | | | | |
| Payroll | 154,426 | 95,949 | 154,426 | 95,949 | 154,426 | 95,949 | 154,426 | 95,949 | 154,426 | 95,949 | 154,426 | 95,949 | 154,426 | 1,656,676 |
| Royalties | 1,583 | 1,583 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 19,252 |
| Operating Supplies | 282,080 | 282,080 | 242,520 | 242,520 | 242,520 | 242,520 | 248,110 | 253,859 | 255,859 | 255,859 | 255,420 | 254,560 | 254,560 | 3,314,440 |
| Outside Services | 19,680 | 19,680 | 16,920 | 16,920 | 16,920 | 16,920 | 17,310 | 17,850 | 17,850 | 17,850 | 17,820 | 17,760 | 17,760 | 231,260 |
| Rent | 79,017 | | | | | 79,017 | | | 79,017 | 79,017 | | | | 271,090 |
| Lease Payments | 20,102 | | | | | 20,102 | 66,681 | | | 20,102 | 66,681 | | | 260,348 |
| Temporary Services | 1,210 | 1,210 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 | 14,713 |
| Freight | 13,986 | 13,986 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 176,107 |
| Computer Expense | | | | | | | | 6,183 | 6,183 | | | | | 18,550 |
| T & E Expense | | | 23,157 | | | | | 23,157 | | | | | 23,157 | 69,472 |
| Accounting Fees | 3,841 | | 3,841 | | 3,841 | | | 3,841 | | | | | | 15,365 |
| Utilities | | 54,478 | | | | 54,478 | | | | 54,478 | | | | 163,433 |
| Telephone | | 9,058 | | | | 9,058 | | | | 9,058 | | | | 27,173 |
| Repairs & Maintenance | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 85,983 |
| Advertising | 738 | 738 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 8,970 |
| Vehicles | | | | 8,417 | | | 8,417 | 8,417 | | | | 8,417 | | 25,250 |
| Legal Fees | | | | 25,816 | | | 25,816 | 25,816 | | | | 25,816 | | 77,448 |
| Office Expense | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 43,725 |
| Visa/MC Annual Fee | | | | | | 100,000 | | | | 100,000 | | | | 200,000 |
| Insurance | | | | | 150,000 | | | | 78,375 | | | | 78,375 | 306,750 |
| Other | 17,295 | 12,591 | 12,591 | 12,591 | 17,295 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 173,089 |
| | | | | | | | | | | | | | | |
| Interest Expense | | | 40,107 | | | 40,107 | 40,107 | | | | 40,107 | | | 120,322 |
| Bank Fees | | | 2,524 | | | 2,524 | 2,524 | | | | 2,524 | | | 7,583 |
| AB/DC Fees | | | | | | | | | | | | | | |
| Operational Loan Paydown | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 221,000 |
| | | | | | | | | | | | | | | |
| Total Operational Payments | 621,242 | 583,317 | 512,560 | 445,680 | 657,811 | 674,101 | 515,221 | 459,940 | 595,742 | 688,361 | 593,241 | 458,560 | 594,362 | 7,471,938 |
| Adjustments | | | | | | | | | | | | | | |
| Ending Cash from Operations | 1,990,927 | 2,061,609 | 1,775,928 | 1,894,248 | 1,808,437 | 1,690,335 | 1,682,115 | 1,685,898 | 1,485,156 | 1,391,795 | 1,392,755 | 1,207,918 | 1,205,556 | |
| | | | | | | | | | | | | | | |
| Bankruptcy Related Expense | | | | | | | | | | | | | | |
| Lead Counsel | | 100,508 | | | 100,508 | | 100,508 | | | | 100,508 | | | 301,525 |
| Local Counsel | | 18,845 | | | 18,845 | | 18,845 | | | | 18,845 | | | 56,536 |
| F/A | | 100,508 | | | 100,508 | | 100,508 | | | | 100,508 | | | 301,525 |
| Claims Agent | | | | | | | | | | | | | | |
| Transaction Advisors | | 12,564 | | | 12,564 | | 12,564 | | | | 12,564 | | | 25,127 |
| Accountants | | 31,409 | | | | | | | | | | | | 37,691 |
| Misc Professionals | | | | | | | | | | | | | | 31,409 |
| Creditor Counsel | | 33,503 | | | 33,503 | | 33,503 | | | | 33,503 | | | 100,508 |
| Creditor F/A | | 33,503 | | | 33,503 | | 33,503 | | | | 33,503 | | | 100,508 |
| Creditor Local Counsel | | 6,282 | | | 6,282 | | 6,282 | | | | 6,282 | | | 18,845 |
| Court/Trustee | | | | | 13,000 | | 13,000 | | | | | | | 13,000 |
| Pre-Petition Critical Vendor Payment | | | | | | | | | | | | | | |
| Total Bankruptcy Related Expense | 0 | 337,122 | 0 | 0 | 0 | 0 | 331,276 | 0 | 0 | 0 | 318,276 | 0 | 0 | 986,675 |
| | | | | | | | | | | | | | | |
| Net Ending Cash | 1,990,927 | 1,724,488 | 1,775,928 | 1,894,248 | 1,808,437 | 1,690,335 | 1,550,838 | 1,485,898 | 1,485,156 | 1,391,795 | 1,074,478 | 1,207,918 | 1,705,556 | |

**EXHIBIT C**

**Versatile Card Technology, Inc. (DG)**

| | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Week since inception of Case | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Week Number | 3/23/12 | 3/30/12 | 4/6/12 | 4/13/12 | 4/20/12 | 4/27/12 | 5/4/12 | 5/11/12 | 5/18/12 | 5/25/12 | 6/1/12 | 6/8/12 | 6/15/12 |
| Week ending Friday | | | | | | | | | | | | | |
| Beginning Cash (Operational Acct. Only) | 987,347 | 1,082,634 | 1,146,260 | 1,666,158 | 984,542 | 936,830 | 925,090 | 679,701 | 623,085 | 575,372 | 563,633 | 617,522 | 340,003 |
| Receipts | 793,000 | 793,000 | 793,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 |
| Intercompany Loan - In | | | | | | | | | | | | | |
| Intercompany Loan - Out | | | | | | | | | | | | | |
| Weekly cash inflows (smoothed) | 793,000 | 793,000 | 793,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 | 650,000 |
| Payroll | 104,000 | 189,000 | 104,000 | 189,000 | 104,000 | 164,000 | 104,000 | 164,000 | 104,000 | 164,000 | 104,000 | 164,000 | 104,000 |
| Royalties | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 | 1,462 |
| Operating Supplies | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 | 300,000 |
| Outside Services | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 | 75,000 |
| Rent | 79,017 | | | | 79,017 | 66,681 | | | 79,017 | 66,681 | | | 79,017 |
| Lease Payments | 20,102 | | | 20,102 | | | | | | |
| Temporary Services | 1,118 | 66,681 | 1,118 | | 1,118 | 1,118 | 20,102 | 1,118 | 20,102 | 1,118 | 20,102 | | 20,102 |
| Freight | 12,921 | 1,118 | 12,921 | 1,118 | 12,921 | 12,921 | 1,118 | 12,921 | 1,118 | 1,118 | 1,118 | 1,118 | 1,118 |
| Computer Expense | | 12,921 | | 12,921 | | | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 | 12,921 |
| T & E | | | | 6,183 | | | 6,183 | 6,183 | | | | 6,183 | |
| Accounting Fees | | | | 23,157 | | | 23,157 | 23,157 | | | | 23,157 | |
| | | | | 3,841 | | | 3,841 | 3,841 | | | | 3,841 | |
| Utilities | 54,478 | | | 54,478 | | | 40,107 | | 54,478 | | 40,107 | | 54,478 |
| Telephone | 9,058 | | | 9,058 | | | 2,528 | | 9,058 | | 2,528 | | 9,058 |
| Repairs & Maintenance | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 | 6,922 |
| Advertising | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 | 681 |
| Vehicles | | | 8,417 | | | | 8,417 | | | | 8,417 | | |
| Legal Fees | | | 10,000 | | | | 10,000 | | | | 10,000 | | |
| Office Expense | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 | 3,363 |
| Visa/NC Annual Fee | | | | 78,375 | | | | 78,375 | | | | | 78,375 |
| Insurance | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 | 12,591 |
| Other | | | | | | | | | | | | | |
| Interest Expense | | 40,107 | | | | | | | | | | | |
| Bank Fees | | 2,528 | | | | | | | | | | | |
| ADOC Fees | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 | 17,000 |
| Total Operational Payments | 697,712 | 729,375 | 553,475 | 731,616 | 697,712 | 661,740 | 596,110 | 706,616 | 697,713 | 661,740 | 596,110 | 628,241 | 776,088 |
| Adjustments | | | | | | | | | | | | | |
| Ending Cash from Operations | 1,082,634 | 1,146,260 | 1,385,784 | 984,542 | 936,830 | 925,090 | 978,980 | 623,085 | 575,372 | 563,633 | 617,522 | 639,282 | 213,915 |
| Bankruptcy Related Expenses | | | | | | | | | | | | | |
| Lead Counsel | | | 101,738 | | | 101,738 | | | | | | 101,738 | |
| Local Counsel | | | | | | | | | | | | | |
| Debtor F/A | | | 101,738 | | | 101,738 | | | | | | 101,738 | |
| Claims Agent | | | 12,717 | | | 12,717 | | | | | | | |
| Transaction Advisors | | | 12,717 | | | | | | | | | | |
| Accountants | | | 12,717 | | | 12,717 | | | | | | 12,717 | |
| Misc Professionals | | | | | | | | | | | | | |
| Creditor Counsel | | | 33,913 | | | 33,913 | | | | | | 33,913 | |
| Creditor F/A | | | 33,913 | | | 33,913 | | | | | | 33,913 | |
| Creditor Local Counsel | | | 2,543 | | | 2,543 | | | | | | 2,543 | |
| Court/Trustee | | | 7,639 | | | | | | | | | | |
| Pre-Petition Critical Vendor Payment | | | | | | | | | | | | | |
| Total Bankruptcy Related Expenses | 0 | 0 | 319,627 | 0 | 0 | 299,279 | 0 | 0 | 0 | 0 | 0 | 299,279 | 0 |
| Net Ending Cash | 1,082,634 | 1,146,260 | 1,066,158 | 984,542 | 936,830 | 925,090 | 679,701 | 623,085 | 575,372 | 563,633 | 617,522 | 340,003 | 213,915 |

## Fulfillment Xcellence, Inc.

| Week Number | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | 42 | 43 | 44 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| Week ending Friday | 3/23/12 | 3/30/12 | 4/6/12 | 4/13/12 | 4/20/12 | 4/27/12 | 5/4/12 | 5/11/12 | 5/18/12 | 5/25/12 | 6/1/12 | 6/8/12 | 6/15/12 |
| Beginning Cash (Operational Acct. Only) | 6,017,910 | 5,811,386 | 5,688,394 | 5,270,053 | 5,167,632 | 5,127,972 | 5,053,980 | 4,828,514 | 4,763,323 | 4,731,361 | 4,667,341 | 4,662,249 | 4,392,984 |
| Receipts | 450,000 | 450,000 | 450,000 | 479,000 | 479,000 | 479,000 | 479,000 | 422,175 | 422,175 | 422,175 | 422,175 | 422,175 | 422,175 |
| Less Transfers to Postage Account (1) | | | | | | | | | | | | | |
| Intercompany Loan Receipt | | | | | | | | | | | | | |
| Intercompany Loan Payment | | | | | | | | | | | | | |
| Weekly cash inflows | 450,000 | 450,000 | 450,000 | 479,000 | 479,000 | 479,000 | 479,000 | 422,175 | 422,175 | 422,175 | 422,175 | 422,175 | 422,175 |
| Payroll | | 68,579 | | 76,079 | | 48,579 | | 56,079 | | 48,579 | | 56,079 | |
| Insurance | | 4,216 | | 4,216 | | 4,216 | | 4,216 | | 4,216 | | 4,216 | |
| Outside Services | 473,125 | 473,125 | 473,125 | 473,125 | 473,125 | 473,125 | 473,125 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 | 400,000 |
| Rent | 2,768 | | | | 2,768 | | | | | 2,768 | | | |
| Utilities | 283 | | | | 283 | | | | | 283 | | | |
| Telephone | 3,277 | | | | 3,277 | | | | | 3,277 | | | |
| Advertising | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 | 908 |
| Legal Fees | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 | 1,923 |
| Repairs & Maintenance | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 | 257 |
| Vehicles | | | | | | | | | | | | | |
| T & E | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 | 3,511 |
| Debt Service | | | | 930 | 9,135 | | | | 9,135 | | | | 9,135 |
| Insurance | | | | | | | | | 14,930 | | | | 14,930 |
| Sales Tax | | | | | 3,000 | | | | 3,000 | | | | 3,000 |
| Other | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 | 2,473 |
| Interest | | | | | | | | | | | | | |
| Bank Fees | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 |
| ABOC Fees | | | 196 | | | | 196 | | | | 196 | | |
| Principal Paydown | 150,000 | | 150,000 | | | | | | | | | | |
| Adjustments | | | | | | | | | | | | | |
| Total Operational Payments | 656,525 | 572,992 | 650,393 | 581,422 | 518,660 | 552,992 | 500,393 | 487,367 | 454,137 | 486,195 | 427,268 | 487,367 | 454,137 |
| Ending Cash from Operations | 5,811,386 | 5,688,394 | 5,488,001 | 5,167,632 | 5,127,972 | 5,053,980 | 5,032,588 | 4,763,323 | 4,731,361 | 4,667,341 | 4,662,249 | 4,597,057 | 4,361,022 |
| Bankruptcy Related Disbursements | | | | | | | | | | | | | |
| Lead Counsel | | | 69,373 | | | | 69,373 | | | | | 69,373 | |
| Local Counsel | | | | | | | | | | | | | |
| Debtor F/A | | | 69,373 | | | | 69,373 | | | | | 69,373 | |
| Claims Agent | | | 8,672 | | | | 8,672 | | | | | 8,672 | |
| Transaction Advisors | | | 8,672 | | | | - | | | | | - | |
| Accountants | | | 8,672 | | | | 8,672 | | | | | 8,672 | |
| Misc Professionals | | | - | | | | - | | | | | - | |
| Creditor Counsel | | | 23,124 | | | | 23,124 | | | | | 23,124 | |
| Creditor F/A | | | 23,124 | | | | 23,124 | | | | | 23,124 | |
| Creditor Local Counsel | | | 1,734 | | | | 1,734 | | | | | 1,734 | |
| Court/Trustee | | | 5,203 | | | | | | | | | | |
| Total Bankruptcy Related Disbursements | 0 | 0 | 217,948 | 0 | 0 | 0 | 204,073 | 0 | 0 | 0 | 0 | 204,073 | 0 |
| Net Ending Cash | 5,811,386 | 5,688,394 | 5,270,053 | 5,167,632 | 5,127,972 | 5,053,980 | 4,828,514 | 4,763,323 | 4,731,361 | 4,667,341 | 4,662,249 | 4,392,984 | 4,361,022 |

(1) Money received in the Operating account from Customers for Postage, rather than received in the Postage account.