UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| QUALTEQ, INC., ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC., *et al.*,[1] ) | |
| ) | Jointly Administered |
| Debtors. ) | |

## AMENDED FINAL ORDER AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL IN WHICH BURR RIDGE BANK ASSERTS AN INTEREST

Upon the motion (the "Motion")[2] of Fred C. Caruso, solely in his capacity as the chapter 11 trustee (the "Trustee") in the chapter 11 cases of Qualteq, Inc., d/b/a VCT New Jersey, Inc. and its affiliated chapter 11 debtors (collectively, the "Debtors") for entry of an amended order (the "Amended Final Order"): (a) amending the *Final Order Authorizing the Debtors to Use Cash Collateral in which Burr Ridge Bank Asserts an Interest* [Delaware Docket No. 263], thereby authorizing the real property Debtors[3] and Anar Real Estate, LLC ("Anar Real Estate") to use cash collateral in which Burr Ridge Bank ("Burr Ridge") asserts an interest, entered pursuant to sections 361 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (a) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (b) 1400 Centre Circle, LLC (7091); (c) 200 Thatcher, LLC (6991); (d) 5300 Katrine, LLC (6016); (e) Anar Real Estates, LLC (9267); (f) Automated Presort, Inc. (0850); (g) Avadamma LLC (4775; 4800; 4810; 4829); (h) Creative Automation Company (4350); (i) Creative Investments, a General Partnership (5992); (j) Fulfillment Xcellence, Inc. (3461); (k) Global Card Services, Inc. (4581); (l) Unique Data Services, Inc. (1068); (m) Unique Embossing Services, Inc. (1043); (n) Unique Mailing Services, Inc. (2594); (o) Versatile Card Technology, Inc. (5258); (p) Veluchamy LLC (3434); and (q) Vmark, Inc. (5904).

[2] Capitalized terms not defined herein shall have the meanings provided in the Motion.

[3] The real property Debtors are 1400 Centre Circle, LLC, 5300 Katrine, LLC, 5200 Thatcher, LLC, Avadamma, LLC, Creative Investments, and Veluchamy LLC.

K&E 22723507

(b) granting related relief; Burr Ridge asserting a valid, perfected first priority mortgage lien and secured interest (the "Mortgage") on the property owned by 5300 Katrine, LLC ("5300 Katrine"), one of the real property Debtors, located at 5300 Katrine Ave., Downers Grove, Illinois, 60515 (the "Property") and a valid, perfected first priority lien on the rents and other proceeds generated from the Property (the "Cash Collateral," together with the Mortgage, the "Collateral"); Burr Ridge consenting to use of its Cash Collateral as provided for herein; and the Court having considered the statements of counsel; and it appearing to the Court that (i) granting relief on the terms and conditions herein contained is necessary and essential to enable 5300 Katrine to continue to operate its business, and (ii) the terms for use of Cash Collateral and the grant of security interests, liens, rights, and priorities to Burr Ridge are fair and appropriate under the circumstances; and good cause appearing therefor,

The Court hereby makes the following Findings of Fact and Order:

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This is a "single asset real estate case" as that term is defined in the Bankruptcy Code.

3. The Trustee has no basis to dispute Debtors' agreement that Burr Ridge has a valid, enforceable, perfected, first priority mortgage lien and security interest in the Property and the Collateral to the extent described in that certain mortgage dated October 20, 2009, and recorded on November 4, 2009 in the office of the DuPage Recorder of Deeds, which is not subject to contest, avoidance or offset. The Official Committee of Unsecured Creditors (the "Committee") shall have through and including December 28, 2012, to initiate a challenge to

2

Burr Ridge's secured position. If a challenge is not initiated within such time, the liens and security interests of Burr Ridge shall be deemed valid and enforceable in all respects.

4. The Trustee is hereby authorized to cause 5300 Katrine and/or Anar Real Estate (collectively referred to herein as the "Katrine Entities") to use Cash Collateral solely for the disbursements set forth in the budget (the "Budget"), attached hereto as **Exhibit 1**, including any successive Extended Budget (as defined herein), and pursuant to the terms of this Order. The period covered by the Budget, and each successive Extended Budget shall be referred to herein as the "Budget Period." Other than as expressly provided for herein, the Trustee is and shall be authorized to use Cash Collateral on behalf of the Katrine Entities exclusively for disbursements to the extent and in the amounts set forth in the Budget. The Trustee may use Cash Collateral on behalf of the Katrine Entities in excess of the amounts set forth for each "category" in the Budget (e.g., "rent," "phone," or "utilities"), provided that such excess shall not exceed $1,500 in the aggregate for all categories measured on a cumulative, four-week basis, provided further that Cash Collateral is available. In the event that expenses for a particular week in any expense category come in under the amount set forth in the Budget, such amounts shall roll forward and shall be available in future weeks and may be used by the Trustee, on behalf of the Katrine Entities, to off-set any overages for that particular expense category for future weeks. In the event that Burr Ridge and the Committee consent, in writing, to the use of Burr Ridge's Cash Collateral in a manner or amount which does not conform to the Budget (such use of Cash Collateral, a "Non-Conforming Use"), the Trustee, on behalf of the Katrine Entities, shall be authorized, pursuant to this Amended Final Order, to expend Cash Collateral for such Non-Conforming Use without further Court approval.

3

5. No later than three weeks prior to the end of each applicable Budget Period, the Trustee shall provide Burr Ridge and the Committee with an updated 13-week budget (each such budget an "Extended Budget") for the succeeding Budget Period. If neither Burr Ridge nor the Committee files an objection to the continued use of Cash Collateral in accordance with the procedures set forth herein, then the Extended Budget shall become effective on the first day of the first week provided for in the Extended Budget. In the event that Burr Ridge or the Committee has an objection to the Extended Budget or the continued use of Cash Collateral (including the terms and conditions of such use), which cannot be consensually resolved, they shall file such objection with the Court within ten business days of receipt of the Extended Budget, and a hearing shall be held on such objection prior to the expiration of the previously approved budget period.

6. The Trustee shall provide Burr Ridge and the Committee with four-week reconciliations of actual to budgeted income and expenditures on or before the Wednesday following the end of each four-week period. Such reconciliations shall be provided to Burr Ridge c/o Larry Dolosic ldolosic@brbank.com, with a copy to Faye Feinstein faye.feinstein@quarles.com.

7. In order to (a) provide protection to Burr Ridge for the Katrine Entities' use of Cash Collateral and (b) provide Burr Ridge with protection against any decrease in the value of its interest in the Property and the Collateral resulting from the stay imposed under § 362 of the Bankruptcy Code, or the use of such Property or Collateral by the Katrine Entities, Burr Ridge is hereby granted (and not to any lender that is not currently in privity with the Katrine Entities, i.e., this Amended Final Order does not authorize any "cross-collateralization" with the liens of other lenders), to the extent that Burr Ridge had a perfected security interest prior to the

4

bankruptcy filing: (i) to the extent not heretofore granted, a lien against and security interest in all presently owned and hereafter-acquired property, assets, and rights, of the same kind and nature and in the same type of collateral in which Burr Ridge held valid and perfected liens and security interests prior to the bankruptcy filing of 5300 Katrine (but not including causes of action, if any, of the estate arising under §§ 544, 545, 546, 547, 548, 549, 550, or 552 of the Bankruptcy Code) (the "Post-Petition Liens"); and (ii) solely to the extent of any diminution in the value of the Collateral, a superpriority administrative expense claim (the "Superpriority Claim") in accordance with § 507(b) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of 5300 Katrine, now in existence or hereafter incurred by the Trustee on behalf of 5300 Katrine, and over any and all administrative expenses and priority claims of the kind specified in, or ordered pursuant to Bankruptcy Code §§ 105, 326, 330, 331, 503(b), 506(c), 507(a) or 552, and over all rights of set-off. The Post Petition Liens granted hereunder shall be subject only to valid, perfected, and enforceable prepetition liens which were senior to Burr Ridge's respective liens or security interests as of the Petition Date, if any, and professional fees contained in the Budget, if any, as they may be agreed to by the parties. The Superpriority Claim granted hereunder shall be subject to the payment of United States Trustee's fees for the 5300 Katrine case pursuant to 28 U.S.C. § 1930. Notwithstanding anything herein to the contrary, Burr Ridge agrees to marshal its Collateral in a commercially reasonable manner and to satisfy its claims and security interests in the Collateral from all other possible sources prior to satisfying its claims and security interests from recoveries from causes of action, if any, of the estate arising under Chapter 5 of the Bankruptcy Code.

8. As additional protection for Burr Ridge's interest in the Property and the Collateral, the Trustee shall confirm that Burr Ridge remains a loss payee on the Katrine Entities' property insurance policy covering the Property (if not already done), and shall deliver a copy of the current insurance certificate to Burr Ridge within fourteen (14) days following entry of this Amended Final Order.

9. The Post-Petition Liens granted to Burr Ridge pursuant to the terms of this Order shall be valid and perfected, as of the date of this Order, without the need for the execution or filing of any further document or instrument otherwise required to be executed or filed under applicable non-bankruptcy law. Notwithstanding such automatic perfection, the Trustee, on behalf of the Katrine Entities, shall execute and deliver such further documents as Burr Ridge may reasonably request to evidence and give notice of the Post-Petition Liens granted by this Order. Copies of any such documents shall be provided to the Committee.

10. The automatic stay imposed by § 362 of the Bankruptcy Code is hereby modified and vacated, to the extent necessary, to implement and effectuate the terms and conditions of this Order. The automatic stay, in all other respects, shall remain in effect pending further order of this Court.

11. Subject to Burr Ridge's right to object to fees requested, the Trustee shall be authorized to use Cash Collateral for payment of such fees, so long as they do not exceed the amounts provided in the Budget or any Extended Budget. The parties have agreed that no Cash Collateral shall be used for payment of any "ordinary course professional" in an amount exceeding any agreed to by the parties as set forth in the Budget or an Extended Budget.

12. The Trustee shall not borrow funds on behalf of the Katrine Entities from any Debtor or any other party on a basis that would place any such new lender in either a priority

position above or *pari passu* with Burr Ridge, or which would grant to any such lender a lien against the Property or the Cash Collateral. The Trustee shall (a) inform the Committee and Burr Ridge of any intercompany unsecured loans at least 24 hours before they are made, (b) seek the consent of Burr Ridge and the Committee to make such loans in accordance with paragraph 4 hereof, and (c) revise the Budget to the extent of such loans.

13. The authority of the Trustee to use Cash Collateral, pursuant to this Amended Final Order, shall terminate on the earlier of (a) the date of entry by the Court of an order modifying this Amended Final Order (unless such order authorizes continued cash collateral use), (b) an Event of Default (as hereinafter defined) that is not cured within 15 days of Burr Ridge providing written notice of the Event of Default to the Trustee and the Committee, provided, however, that the aforementioned cure period will not apply to a default stemming from a conversion or dismissal of 5300 Katrine's bankruptcy case or (c) the expiration of the Budget Period or an Extended Budget period absent further order of the Court or agreement on a further budget as provided for herein. Burr Ridge is authorized to provide notice of an Event of Default by e-mail and by Federal Express or United Parcel Service to the Trustee's counsel and counsel to the Committee.

14. Each of the following events shall constitute an Event of Default:

    (a) Entry of an order converting the 5300 Katrine or Anar Real Estate cases to a case under Chapter 7 of the Bankruptcy Code;

    (b) Entry of an order dismissing the 5300 Katrine or Anar Real Estate cases;

    (c) Failure of the Trustee to comply with any material provision of this Amended Final Order;

    (d) Failure of the Trustee to make the payments to Burr Ridge as provided in the Budget and/or any Extended Budget; or

    (e)    Entry of an order granting liens against the Property or the Cash Collateral or priority administrative expense claims pursuant to § 364 of the Bankruptcy Code to any party other than Burr Ridge.

15. Upon the occurrence of an Event of Default, (i) the Trustee shall immediately cease using Cash Collateral and shall hold all Cash Collateral pending further order of the Court; and (ii) Burr Ridge shall be entitled to seek modification of the automatic stay in order to pursue all of its rights and remedies against the Katrine Entities and/or its Collateral, or request any other relief it deems appropriate.

16. Nothing herein is intended, nor shall it be deemed, to constitute a waiver of the rights of Burr Ridge to take any position herein, or request relief from the Court on any basis at any time, including, without limitation, to seek adequate protection, to object to the continued use of Cash Collateral, to modify the automatic stay, or to dismiss or convert this case.

17. The notice given by the Trustee of this Amended Final Order was given in accordance with Bankruptcy Rule 4001(b). Within three business days after the Court's entry of this Amended Final Order, the Trustee shall mail copies hereof to: (i) Burr Ridge; (ii) the United States Trustee; (iii) counsel to the Official Committee of Unsecured Creditors; and (iv) known holders of a lien against any of the Debtors' assets.

18. This Amended Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Trustee's appointment immediately upon entry hereof.

19. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Amended Final Order.

Chicago, Illinois
Dated: December 5, 2012

_____
United States Bankruptcy Judge

K&E 22723507

# EXHIBIT 1

Budget

5300 Katrine, LLC
13wk Cash Flow Projections
For the Period from September 10, 2012 to December 7, 2012

Major Tenant: Unique Data Services, Inc. (UDS)
Bld Sq. Footage: 109,000

| CASH FORECAST for the week ending | Wk 1 9/14/12 Bud | Wk 2 9/21/12 Bud | Wk 3 9/28/12 Bud | Wk 4 10/5/12 Bud | Wk 5 10/12/12 Bud | Wk 6 10/19/12 Bud | Wk 7 10/26/12 Bud | Wk 8 11/2/12 Bud | Wk 9 11/9/12 Bud | Wk 10 11/16/12 Bud | Wk 11 11/23/12 Bud | Wk 12 11/30/12 Bud | Wk 13 12/7/12 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | 254,588 | 278,303 | 277,803 | 276,803 | 333,821 | 333,571 | 333,071 | 309,185 | 308,935 | 367,228 | 366,428 | 343,817 | 343,567 | 254,588 |
| Cash Receipts | | | | | | | | | | | | | | |
| Rental Income | 45,876 | | | 62,543 | | | | | 62,543 | | | | 62,543 | 233,504 |
| Management Fee - Incremental | | | | | | | | | | | | | | - |
| Non-Debtor Reimbursement | | | | | | | | | | | | | | - |
| Professional Fee Reimbursement | | | | | | | | | | | | | | - |
| Total Cash Receipts | 45,876 | - | - | 62,543 | - | - | - | - | 62,543 | - | - | - | 62,543 | 233,504 |
| Cash Disbursements - Operations | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | (300) | | | (300) | | | (300) | | | (300) | | | (300) | (1,500) |
| Supplies | | | | | | | | | | | | | | - |
| HVAC | | | | | | | | | | | | | | - |
| Management Fees | | | | (3,000) | | | | | (3,000) | | | | (3,000) | (9,000) |
| Professional Fee Reimbursement | | | | (1,000) | | | | | (1,000) | | | | (1,000) | (3,000) |
| Security | | | | | | | | | | | | | | - |
| Insurance | | | | | | | | | | | | | | - |
| New Capital Expenditures | | | | | | | | | | | | | | - |
| Utilities | | | | | | | | | | | | | | - |
| Misc. OpEx (Mileage, minor supplies, office) | (250) | (500) | (1,000) | (250) | (250) | (500) | (1,000) | (250) | (250) | (500) | (1,000) | (250) | (250) | (6,250) |
| Fees (Payroll, Bank, Service related) | | | | | | | | | | | | | | - |
| Fuel Purchases | | | | | | | | | | | | | | - |
| US Trustee Fees | | | | (975) | | | (975) | | | | | | | (1,950) |
| Property Tax | | | | | | | | | | | | | | - |
| Total Cash Disbursements - Operations | (550) | (500) | (1,000) | (5,525) | (250) | (500) | (2,275) | (250) | (4,250) | (800) | (1,000) | (250) | (4,550) | (21,700) |
| Total Cash Flow Before Debt Service | 45,326 | (500) | (1,000) | 57,018 | (250) | (500) | (2,275) | (250) | 58,293 | (800) | (1,000) | (250) | 57,993 | 211,804 |
| Debt Service & Other | | | | | | | | | | | | | | |
| Debt Service - Principal | (4,894) | | | | | | (4,894) | | | | (4,894) | | | (14,681) |
| Debt Service - Interest | (16,717) | | | | | | (16,717) | | | | (16,717) | | | (50,151) |
| Total Debt Service & Other | (21,611) | - | - | - | - | - | (21,611) | - | - | - | (21,611) | - | - | (64,832) |
| Net Cash Flow | 23,715 | (500) | (1,000) | 57,018 | (250) | (500) | (23,886) | (250) | 58,293 | (800) | (22,611) | (250) | 57,993 | 146,972 |
| Cash Balance, Ending | 278,303 | 277,803 | 276,803 | 333,821 | 333,571 | 333,071 | 309,185 | 308,935 | 367,228 | 366,428 | 343,817 | 343,567 | 401,560 | 401,560 |
| Estimated Debt | | | | | | | | | | | | | | |
| Beginning Balance | 2,953,431 | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,943,643 | 2,943,643 | 2,943,643 | 2,943,643 | 2,938,750 | 2,938,750 | 2,953,431 |
| Principal payments | (4,894) | | | | | | (4,894) | | | | (4,894) | | | (14,681) |
| Ending Balance | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,948,537 | 2,943,643 | 2,943,643 | 2,943,643 | 2,943,643 | 2,938,750 | 2,938,750 | 2,938,750 | 2,938,750 |

| | Taxes Last Paid | Taxes Next Due | Taxes Paid By: |
|---|---|---|---|
| | Sep-12 | Jun-13 | Landlord |