UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUALTEQ, INC., | ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC., *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

## AMENDED FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL IN WHICH MB FINANCIAL BANK, N.A. ASSERTS AN INTEREST

Upon the motion (the "Motion")[2] of Fred C. Caruso, solely in his capacity as the chapter

11 trustee (the "Trustee") in the chapter 11 cases of Qualteq, Inc., d/b/a VCT New Jersey, Inc.

and its affiliated chapter 11 debtors (collectively, the "Debtors") for entry of an amended order

(the "Amended Final Order"): (a) amending the *Final Order Authorizing Use of Cash Collateral*

*in Which MB Financial Bank, N.A. Asserts an Interest* [Delaware Docket No. 272],

thereby authorizing Avadamma, LLC (the "Borrower") and Anar Real Estate, LLC ("Anar Real

Estate") to use cash collateral in which MB Financial Bank, N.A., as successor in interest to

Broadway Bank (the "Lender") asserts an interest, entered pursuant to sections 361 and 363 of

title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"); and (b) granting related relief; the Lender

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (a) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (b) 1400 Centre Circle, LLC (7091); (c) 5200 Thatcher, LLC (6991); (d) 5300 Katrine, LLC (6016); (e) Anar Real Estate, LLC (9267); (f) Automated Presort, Inc. (0850); (g) Avadamma LLC (4775; 4800; 4810; 4829); (h) Creative Automation Company (4350); (i) Creative Investments, a General Partnership (5992); (j) Fulfillment Xcellence, Inc. (3461); (k) Global Card Services, Inc. (4581); (l) Unique Data Services, Inc. (1068); (m) Unique Embossing Services, Inc. (1043); (n) Unique Mailing Services, Inc. (2594); (o) Versatile Card Technology, Inc. (5258); (p) Veluchamy LLC (3434); and (q) Vmark, Inc. (5904).

[2]  Capitalized terms not defined herein shall have the meanings provided in the Motion.

K&E 24641042

having consented to use of its cash collateral (the "Cash Collateral") as provided for herein; and the Court having considered the offers of proof and the statements of counsel; and it appearing to the Court that granting certain relief on the terms and conditions herein contained is necessary and essential to enable the Trustee to continue to operate the Borrower's businesses; and it appearing that the Lender is adequately protected; and good cause appearing therefor;

It is HEREBY FOUND THAT:

A.      On August 14, 2011 (the "Initial Petition Date"), each of the Debtors except for Anar filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware ("Delaware Bankruptcy Court").

B.      On September 11, 2011 (the "Anar Petition Date," and together with the Initial Petition Date, the "Petition Date"), Anar filed its petition for relief with the United States Bankruptcy Court for the District of Delaware.

C.      On October 6, 2011, the Delaware Bankruptcy Court entered the *Final Order Authorizing Use of Cash Collateral in Which MB Financial Bank, N.A. Asserts an Interest* [Delaware Docket No. 272] ("Original MB Order").

D.      On February 16, 2012, the Delaware Bankruptcy Court transferred venue to this Court.

E.      On April 5, 2012, Bank of America, N.A., filed the *Motion to Appoint a Chapter 11 Trustee* [Docket No. 202], and on May 2, 2012, the Court entered the *Order Granting Motion for Appointment of a Chapter 11 Trustee* [Docket No. 334].

F.      On May 9, 2012, the U.S. Trustee filed an application to appoint Fred C. Caruso as chapter 11 trustee in the Debtors' chapter 11 cases (the "Cases").

K&E 24641042

G.      On May 10, 2012 (the "Appointment Date"), this Court entered an order

approving Mr. Caruso's appointment as the Trustee [Docket No. 351], thereby taking the

Debtors and their assets out of possession and placing their assets and businesses under the

Trustee's control.

H.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157(b) and

1334.  This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

I.      The Motion was filed pursuant to 11 U.S.C. § 363, Bankruptcy Rules 2002, 4001

and 9014, and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the

Northern District of Illinois.

J.      The Trustee and the Lender acknowledge, agree, and stipulate that:

        i.      pursuant to various loan agreements, including (a) that certain Loan
Agreement dated August 8, 2008, (b) those certain Loan Modification Agreements dated March
26, 2009, (c) those certain Loan Modification Agreements dated March 30, 2009, and (d) those
certain Loan Modification Agreements dated April 16, 2010 (collectively, and as amended,
supplemented, waived and otherwise modified from time to time, the "Loan Agreements," and
together with all other mortgages, security agreements, collateral assignments, pledges,
documents, notes, instruments and any other agreements delivered pursuant thereto or in
connection therewith, the "Applicable Loan Documents"), the Lender made two loans to or for
the benefit of the Borrower or its predecessors in interest.  The Lender made the first loan in the
original principal amount of $32,900,000 (the "First Loan"), and the Lender made the second
loan in the original principal amount of $4,150,000 (the "Second Loan," and collectively with
the First Loan, the "Loans");

        ii.     as of the Initial Petition Date, the Borrower was indebted to the Lender on
account of the Indebtedness (as defined below), which is comprised of amounts due in
connection with the Loans, the Applicable Loan Documents and associated fees, costs, and
expenses.  For purposes of this Order, the term "Indebtedness" shall mean and include, without
duplication, any and all amounts owing or outstanding under the Applicable Loan Documents,
and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts
(including, without limitation, any reasonable attorneys', accountants', financial advisors', and
other fees and expenses that are chargeable or reimbursable under the applicable provisions of
the Applicable Loan Documents, the Original MB Order, and this Order).  As of the Initial
Petition Date, the aggregate liquidated amount of the Indebtedness was $36,276,452.75,
including interest but excluding accrued attorneys' fees and costs of collection.  Since the Initial
Petition Date, the Lender has received certain monthly payments from the Borrower or the
Trustee on behalf of the Borrower in accordance with the Original MB Order, which payments
have been appropriately applied against the Indebtedness.  As a result of those payments, the

aggregate liquidated amount of the Indebtedness as of February 25, 2013 is not less than $35,126,193.90, including interest but excluding accrued attorneys' fees and costs of collection;

    iii. pursuant to the Applicable Loan Documents, and in order to secure the Indebtedness, the Lender acquired first priority and continuing mortgages, security interests, and collateral assignments of rents and leases (collectively, the "Real Property Liens") covering the following parcels of real estate: (a) 1201–1213 Butterfield Road, Downers Grove, IL; (b) North Park Mall, 250–304 W. North Avenue, Villa Park, IL, (c) Meadowbrook Shopping Center, 2001-2153 63rd Street and 6310–6400 Woodward, Downers Grove, IL, and (d) 500 N. LaSalle, Chicago, IL (collectively, the "Real Property Collateral"). The Real Property Collateral is owned by certain Illinois land trusts (the "Land Trusts"), of which the Borrower or certain of its series are the beneficiaries. Pursuant to the Applicable Loan Documents, and in order to secure the Indebtedness, the Borrower or certain of its series made first priority and continuing collateral assignments (collectively, the "Personal Property Liens") of their beneficial interests in the Land Trusts (collectively, the "Personal Property Collateral") to the Lender;

    iv. as of the Initial Petition Date and at all times thereafter; (a) the Applicable Loan Documents are valid and binding agreements and obligations of the Borrower and are enforceable against the Borrower in accordance with their terms; (b) the Real Property Liens and the Personal Property Liens (collectively, the "Prepetition Liens") constitute valid, binding, enforceable, and perfected first priority security interests and liens that are not subject to avoidance, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, subject only to any liens that are senior to such Prepetition Liens in accordance with applicable law; (c) the Indebtedness constitutes the legal, valid, and binding obligations of the Borrower, and the Indebtedness, and any amounts paid at any time to the Lender on account thereof or with respect thereto, are not subject to (1) any objection, recoupment, offset, defense, or counterclaim of any kind or nature, or (2) avoidance, reduction, disgorgement, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (d) the rents generated from the Real Property Collateral constitute Cash Collateral; provided, however, that notwithstanding anything herein to the contrary, the Trustee, on behalf of the Borrower, retains all rights to surcharge any and all of the Lender's collateral (including Real Property Collateral and Personal Property Collateral) with respect to any and all reasonable, necessary costs and expenses arising or payable on and after December 1, 2012 to the maximum extent permitted by section 506(c) of the Bankruptcy Code pursuant to paragraph 11 hereof; and

    v. the Trustee and the Borrower have waived, discharged, and released any right or claim they may have to challenge the Indebtedness, any payments that the Lender has received on account of the Indebtedness, or any of the Lender's security for the Indebtedness, including the Prepetition Liens; provided, however, that notwithstanding anything herein to the contrary, the Trustee, on behalf of the Borrower, retains all rights to surcharge any and all of the Lender's collateral (including Real Property Collateral and Personal Property Collateral) with respect to any and all reasonable, necessary costs and expenses arising or payable on and after December 1, 2012 to the maximum extent permitted by section 506(c) of the Bankruptcy Code pursuant to paragraph 11 hereof.

K.      The Official Committee of Unsecured Creditors (the "Committee") has not initiated any challenge to the validity and enforceability of the Lender's Prepetition Liens and the Indebtedness, and the Committee has informed the Trustee and the Lender that it will bring no such challenge having had adequate time to review such Prepetition Liens and Indebtedness.

L.      Based upon the record presented by the Trustee to this Court: (1) the use of the Cash Collateral under the terms provided herein reflects the Trustee's exercise of sound business judgment consistent with his fiduciary duty, and is supported by reasonably equivalent value and fair consideration; and (2) the use of Cash Collateral has been negotiated in good faith and at arms' length between the Trustee and the Lender.

it is HEREBY ORDERED THAT:

1.      In accordance with and pursuant to the terms and provisions of this Order, the Court authorizes the Trustee, on behalf of the Borrower and/or Anar Real Estate (collectively referred to herein as the "Borrower-Related Entities"), to use Cash Collateral in which the Lender asserts an interest to fund the disbursements set forth in the 13-week budget (the "Budget") attached hereto as **Exhibit 1**, including any successive Extended Budget (as defined herein).  The period covered by the Budget and each successive Extended Budget shall be referred to herein as the "Budget Period."  The Trustee is and shall be authorized to use Cash Collateral on behalf of the Borrower-Related Entities exclusively for disbursements to the extent and in the amounts set forth in the Budget; provided, however, that to the extent that the Trustee sells any Real Property Collateral or Personal Property Collateral, the Trustee shall distribute the net proceeds of such sales to the Lender at the closings of such sales subject to (a) the Trustee's establishment of (i) appropriate reserves for unpaid costs and expenses covered by the Budget or Extended Budget and (ii) any other appropriate reserves contemplated by the Plan (as defined

K&E 24641042

below), and (b) the Trustee's rights under paragraph 11 hereof. The Trustee may use Cash Collateral on behalf of the Borrower-Related Entities in an amount equal to up to 10% more than a particular corresponding "category" in the Budget (e.g., "rent," "phone," or "utilities"), measured on a cumulative, weekly basis, provided that Cash Collateral is available.

2.      For the sake of clarity, in the event that a particular category of expenses for a particular week come in under the amount set forth in the Budget, such amounts shall roll forward and shall be available in future weeks and may be used by Trustee, on behalf of the Borrower-Related Entities, to off-set any Budget overages in that particular category for such future weeks.

3.      The Trustee on behalf of the Borrower-Related Entities shall not use Cash Collateral to make any intercompany loans or transfers outside the ordinary course of business without the prior consent of the Lender.

4.      In the event that the Lender consents, in writing, to the use of Lender's Cash Collateral in a manner or amount which does not conform to the Budget (such use of Cash Collateral, a "Non-Conforming Use"), the Trustee on behalf of the Borrower-Related Entities shall be authorized pursuant to this Order to expend Cash Collateral for such Non-Conforming Use without further Court approval.

5.      No later than three weeks prior to the end of each applicable Budget Period, the Trustee will provide Lender with an updated 13-week budget for the Borrower-Related Entities (each such budget an "Extended Budget") for the succeeding Budget Period. Unless Lender notifies the Trustee of an objection to such Extended Budget (including filing an objection with the Court if the parties cannot reach a consensual resolution of any such objections) within seven (7) days of Lender's receipt of such Extended Budget, then the Extended Budget shall

K&E 24641042

become immediately effective, and the Trustee will be authorized to use Cash Collateral on behalf of the Borrower-Related Entities in accordance with the terms hereof. To the extent that any objection of Lender extends beyond a Budget Period, the Trustee shall not be authorized to use Cash Collateral on behalf of the Borrower-Related Entities without further Court approval, except (a) to pay necessary, ordinary course operating expenses of the Borrower, or (b) as otherwise agreed by the Lender in writing.

6.      When a line item for non-Lender professional fees is included in a Budget, the Trustee on behalf of the Borrower-Related Entities may transfer cash in the amount of such line item to the professional for whose benefit the line item is included, to be held in trust (the "Professional Fee Accounts") by the professional at issue until applied to the allowed fees and disbursements of such professional pursuant to one or more orders of this Court, including the interim compensation procedures previously approved by the Court in these cases. Each payment made to the Professional Fee Accounts made pursuant to this paragraph shall be deemed to be, and shall be treated as if such payment was, a security retainer paid to the applicable professionals as set forth in the approved Budgets, as of, and *nunc pro tunc* to, the Initial Petition Date; provided, however, that (a) such payments shall remain the Lender's cash collateral until applied to Allowed Professional Fees; and (b) any return or disgorgement of such payments shall be deemed to be the Lender's cash collateral.

7.      Subject to section 506(b) of the Bankruptcy Code, as adequate protection of the rights and interests of the Lender in connection with the use of Cash Collateral pursuant to the terms and conditions of this Order, the Trustee on behalf of the Borrower-Related Entities shall, in accordance with the applicable Budget line items marked "Debt Servicing," "Bank Interest," and "Bank Fees," promptly (a) pay all reasonable fees and expenses incurred by the Lender

K&E 24641042

under its Applicable Loan Documents, and (b) make all other payments payable when and as due to the Lender under the Applicable Loan Documents, including all payments of principal, interest, fees, and charges; provided that any and all such payments shall be applied to reduce the balance of Indebtedness then-outstanding. Invoices supporting any professional fees and expenses being charged by the Lender to any of the Borrower-Related Entities shall be submitted to counsel for the Trustee, with copies to the United States Trustee and counsel to the Committee. The United States Trustee, the Trustee, and the Committee shall have ten (10) days following service of such invoices in which to raise an objection to the payment of any professional fees and expenses of the Lender; provided, however, that (x) none of such fees and expenses, as adequate protection payments hereunder, shall be subject to approval by the Court or to any applicable guidelines of the United States Trustee, and the Lender shall not be required to file with respect thereto any interim or final fee application with the Court; (y) if an objection to a professional's invoice is made within ten (10) days following service of such invoice, the Trustee on behalf of the Borrower-Related Entities shall only be required to pay the undisputed amount and the Court shall have jurisdiction to determine any dispute concerning such invoice; and (z) invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other attorney-client privilege or benefits of the attorney work product doctrine.

8.    In addition to the Lender's security interests, liens, rights, and other interests in and with respect to its collateral, as adequate protection for and to secure the payment of an amount equal to any diminution in the value of its collateral as of the Initial Petition Date, the Trustee on behalf of the Borrower hereby grants to the Lender valid, enforceable, non-avoidable, and fully perfected security interests in and liens upon all assets of the Borrower and all

K&E 24641042

hereafter-acquired assets of the Borrower of the same kind or nature on which the Borrower had valid and perfected liens as of the Initial Petition Date, if any, wherever located, and the proceeds, products, rents, and profits thereof, whether arising from Section 552(b) of the Bankruptcy Code or otherwise (but not including any causes of action arising under the Bankruptcy Code), senior to any other security interests, liens, or encumbrances, retroactive to the Initial Petition Date and without the necessity of any additional documentation or filings, subject only to, in the following order of priority:   (a) valid, perfected, and enforceable prepetition liens which are senior to Lender's respective liens or security interests as of the Initial Petition Date; (b) the payment of the United States Trustee's fees attributable to the Borrower, pursuant to 28 U.S.C. § 1930; and (c) any allowed professional fees and disbursements accrued under the Budget or any successive Extended Budget but unpaid as of the date of termination of the Trustee's use of Cash Collateral on behalf of the Borrower-Related Entities; provided, however, that notwithstanding anything herein to the contrary, the Trustee, on behalf of the Borrower, retains all rights to surcharge any and all of the Lender's collateral (including Real Property Collateral and Personal Property Collateral) with respect to any and all reasonable, necessary costs and expenses arising or payable on and after December 1, 2012 to the maximum extent permitted by section 506(c) of the Bankruptcy Code pursuant to paragraph 11 hereof.

9.      The Trustee on behalf of the Borrower-Related Entities shall provide the Lender and the Committee on an ongoing basis with all reporting and financial information that the Borrower-Related Entities are obligated to provide the Lender pursuant to the terms of the Applicable Loan Documents, except to the extent that the Trustee on behalf of the Borrower-Related Entities receive a written waiver of such obligation from the Lender and the Committee.  By the third business day following the conclusion of each week reflected in the

K&E 24641042

Budgets, the Trustee on behalf of the Borrower-Related Entities shall also provide the Lender and the Committee with a weekly variance report reflecting the actual cash inflows and disbursements for that week as compared with the projections set forth in the Budget.

10.    The occurrence of any one or more of the following events, which has not been cured within 10 days of actual receipt of written notice from the Lender to the Trustee on behalf of the Borrower-Related Entities, shall constitute an event of default (each, an "Event of Default") that shall terminate the Trustee's authority to use Cash Collateral on behalf of the Borrower-Related Entities under this Amended Final Order:  (a) the violation of any of the terms of this Order; (b) the entry of an order (i) converting this case to a case under chapter 7 of the Bankruptcy Code or (ii) terminating the authority of the Trustee to conduct the Borrower-Related Entities' businesses; (c) the termination, expiration, lapse, or reduction of insurance coverage on the real property owned by the Borrower and subject to the liens of the Lender for any reason whatsoever; (d) the failure to pay, when due, which such failure has not been cured within any applicable grace period, any real estate taxes on the real property owned by the Borrower and subject to the liens of the Lender, or any water, sewer, or municipal charges related to the Properties; or (e) an event of default (other than defaults existing on the Initial Petition Date) occurs under the Applicable Loan Documents as modified by this Amended Final Order.

11.    In consideration for the Trustee's use of Cash Collateral on behalf of the Borrower-Related Entities, the Trustee and the Debtors irrevocably waive and shall not assert any surcharge claims against the Lender, its collateral, or any of the Lender's claims under section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender or its agents), for any costs or expenses of administration in these chapter 11 cases

K&E 24641042

from the Initial Petition Date through the effective date of a chapter 11 plan for the Borrower confirmed by the Court (the "Effective Date"), provided, however, that such waiver with respect to any and all reasonable, necessary costs and expenses arising or payable from the period on and after December 1, 2012 to and including the Effective Date shall be conditioned upon: (a) the Lender's affirmative vote in favor of the *Chapter 11 Trustee's First Amended Joint Plan of Liquidation for Qualteq, Inc., d/b/a VCT New Jersey, and Its Affiliated Chapter 11 Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1306] (as may be amended or modified from time to time and including all exhibits and supplements thereto, the "Plan"); and (b) the Lender's negotiation of any Extended Budget in good faith (including with regard to any upward revisions or variances of non-Lender professional fees reasonably requested on account of the sale process for the Borrower's real estate assets through the Court-approved sale process). For the avoidance of doubt, in the event that the Lender does not negotiate an Extended Budget in good faith, the Trustee's rights, on behalf of the Borrower, to surcharge any and all of the Lender's collateral (including Real Property Collateral and Personal Property Collateral) with respect to any and all reasonable, necessary costs and expenses arising or payable on and after December 1, 2012 are fully preserved and enforceable to the maximum extent permitted by section 506(c) of the Bankruptcy Code.

12.     The Lender's Prepetition Liens and the Indebtedness shall be deemed valid and enforceable in all respects, and the agreements, acknowledgment, releases, and stipulations reflected in paragraphs J and K above shall be deemed to be findings of this Court that are final and binding on all creditors and other parties in interest without further action by any party or this Court.

K&E 24641042

13.   This Amended Final Order shall be binding on all parties in interest in this case, and in any converted or superseding case, and their respective successors and assigns, including any trustee.  If any or all of the provisions of this Amended Final Order are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of the Trustee on behalf of the Borrower-Related Entities to the Lender that is or was incurred prior to the Lender's receipt of written notice of the effective date of such modification, vacatur, amendment, or stay (the "Modification Date"), or (ii) the validity, enforceability, or priority of the adequate protection measures or other grants authorized or created by this Amended Final Order; and (b) the adequate protection measures or other grants conveyed pursuant to this Amended Final Order arising prior to the Modification Date shall be governed in all respects by the provisions of this Amended Final Order in effect immediately prior to the Modification Date. Except as otherwise expressly set forth in this Amended Final Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Amended Final Order.

14.   The Trustee and the Lender reserve all rights to request amendments to this Amended Final Order, including without limitation in the event that the Plan is not confirmed.

15.   This Amended Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Initial Petition Date.

16.   This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Amended Final Order.

Chicago, Illinois
Date: *April 23*, 2013

_____
United States Bankruptcy Judge

12

K&E 24641042

EXHIBIT 1

Budget

Avadamma LLC (4 Property Consolidation)
13wk Cash Flow Projections
For the Period from February 25, 2013 to May 24, 2013

| CASH FORECAST / For the week ending | Wk 1 3/1/13 Act | Wk 2 3/8/13 Act | Wk 3 3/15/13 Act | Wk 4 3/22/13 Act | Wk 5 3/29/13 Act | Wk 6 4/5/13 Act | Wk 7 4/12/13 Act | Wk 8 4/19/13 Bud | Wk 9 4/26/13 Bud | Wk 10 5/3/13 Bud | Wk 11 5/10/13 Bud | Wk 12 5/17/13 Bud | Wk 13 5/24/13 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | 201,280 | 200,126 | 313,668 | 267,228 | 258,441 | 9,951,233 | 987,619 | 783,781 | 604,087 | 817,769 | 748,342 | 743,842 | 636,342 | 201,280 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Income | 47,102 | 162,604 | 38,764 | 18,667 | 106,206 | 100,134 | 42,739 | - | - | - | - | - | - | 516,216 |
| CAM & Insurance Adjustment | | (8,000) | | | | | | | | | | | | (8,000) |
| Security Deposit Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| RE Tax Reimbursement | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale Proceeds | | | | | 11,016,600 | 1,488,400 | | 8,800,000 | 4,250,000 | | | | | 25,550,000 |
| **Total Cash Receipts** | 47,102 | 154,604 | 38,764 | 18,667 | 11,122,806 | 1,583,534 | 42,739 | 8,800,000 | 4,250,000 | - | - | - | - | 26,058,216 |
| **Cash Disbursements - Operations** | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | (5,418) | (13,469) | (2,918) | (2,999) | (330) | (9,227) | (5,697) | (10,000) | (27,500) | | | | | (77,558) |
| Snow Removal Costs | (6,870) | (8,805) | (4,680) | (5,160) | (22,990) | (2,580) | (930) | | | | | | | (52,015) |
| Supplies | | (336) | (327) | (76) | | (114) | (93) | (500) | | | | | | (4,860) |
| HVAC | | (492) | | | | (201) | | (93) | (763) | | (1,500) | | | (5,361) |
| Management Fees | | | (46,000) | | (46,000) | | | | (3,000) | (43,000) | | | | (138,000) |
| Professional Fee Reimb. (Restructuring) | | | | | | | (129,799) | | | | | | | (129,799) |
| Security | (2,085) | (9,844) | (1,545) | (335) | (698) | (2,028) | (500) | | (763) | (2,500) | | | | (27,034) |
| Insurance | (17,687) | (17,687) | (17,687) | (17,687) | (17,687) | (213) | | | | (16,926) | | | | (70,750) |
| New Capital Expenditures | (2,888) | (4,342) | (1,015) | (414) | | (5,145) | | | | (6,500) | | (5,000) | | (8,872) |
| Utilities (Note 1) | (13,308) | (3,786) | (5,259) | (5,259) | (3,662) | (18,607) | (18,607) | (5,750) | (71,750) | | | (24,000) | | (149,960) |
| Legal Fees & Ordinary Course Professionals* | | | (2,457) | (17,693) | (23,409) | (3,070) | (3,070) | (7,500) | (2,000) | (6,500) | | (2,000) | | (68,927) |
| Misc. OpEx (Mileage, minor supplies, office) | | | (3,643) | (450) | | | (750) | (3,000) | (15,000) | (500) | | | | (25,482) |
| Fees (Payroll, Bank, Service related)** | | | | | (15) | (639) | (77,289) | (9,362) | (81,550) | | | | | (168,716) |
| 2% break-up fee & 3.25% sale commission | | | | | (406,250) | (131,000) | | (286,000) | (264,125) | | | | | (1,087,375) |
| Security Deposit Liability | | | | | (194,011) | | | (69,141) | (35,000) | | | | | (298,152) |
| Secured Lender Prof Fees-Placeholder | | | | | | | | | | | | | | |
| Professional Fee Holdbacks | | | | | | | | (217,272) | (48,283) | | | | (199,048) | (464,603) |
| IL Replacement Tax & Late Filing Penalties | | | | | | | | (39,959) | (2,220) | | | (40,000) | | (82,179) |
| Other Sale Expenses | | | | | (66,242) | | | (33,333) | (25,000) | | | | | (124,575) |
| US Trustee Fees & Claims Agent | | | | | | | (9,750) | | | | | (35,000) | (16,800) | (61,550) |
| Property Tax | | | | | (694,729) | | | (207,719) | (189,278) | | | | | (1,091,727) |
| **Total Cash Disbursements - Operations** | (48,256) | (41,063) | (85,203) | (27,454) | (1,430,014) | (197,148) | (246,576) | (892,537) | (771,968) | (69,426) | (4,500) | (107,500) | (215,848) | (4,137,494) |
| **Total Cash Flow Before Debt Service** | (1,154) | 113,542 | (46,439) | (8,787) | 9,692,792 | 1,386,386 | (203,838) | 7,907,463 | 3,478,032 | (69,426) | (4,500) | (107,500) | (215,848) | 21,920,722 |
| **Debt Service & Other** | | | | | | | | | | | | | | |
| Debt Service - Principal** | | | | | | (10,350,000) | | (8,087,158) | (3,264,350) | | | | | (21,701,508) |
| Debt Service - Interest | | | | | | | | | | | | | | |
| **Total Debt Service & Other** | | | | | | (10,350,000) | | (8,087,158) | (3,264,350) | | | | | (21,701,508) |
| **Net Cash Flow** | (1,154) | 113,542 | (46,439) | (8,787) | 9,692,792 | (8,963,614) | (203,838) | (179,695) | 213,682 | (69,426) | (4,500) | (107,500) | (215,848) | 219,214 |
| **Cash Balance, Ending** | 200,126 | 313,668 | 267,228 | 258,441 | 9,951,233 | 987,619 | 783,781 | 604,087 | 817,769 | 748,342 | 743,842 | 636,342 | 420,494 | 420,494 |

* Legal & OCP fees in week 12 are payment of 2012/2013 tax preparation to Brad Dooley & Associates.
* Legal & OCP fees in week 8 are to Jeffrey Horwitz for legal services related to property management and lease and tenant issues.
** 2nd half of lease commission of $81,550 in week 9 payable upon opening of tenant's business in 500 LaSalle

Note 1: $40,000 in week 9 utilities is for 500 LaSalle. Amount is unknown and is being researched.

Estimated Debt (recent MB application of payments between P&I is needed)

| | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 35,126,194 | 35,126,194 | 35,126,194 | 35,126,194 | 35,126,194 | 35,126,194 | 24,776,194 | 24,776,194 | 16,689,036 | 13,424,686 | 13,424,686 | 13,424,686 | 13,424,686 | 35,126,194 |
| Principal payments | | | | | | (10,350,000) | | (8,087,158) | (3,264,350) | | | | | (21,701,508) |
| Ending Balance | 35,126,194 | 35,126,194 | 35,126,194 | 35,126,194 | 35,126,194 | 24,776,194 | 24,776,194 | 16,689,036 | 13,424,686 | 13,424,686 | 13,424,686 | 13,424,686 | 13,424,686 | 13,424,686 |

Avadamma LLC – 500 LaSalle
13wk Cash Flow Projections
*For the Period from February 25, 2013 to May 24, 2013*

Major Tenant: Geno's East
Bld Sq. Footage: 17,400

| CASH FORECAST for the week ending | Wk 1 3/1/13 Act | Wk 2 3/8/13 Act | Wk 3 3/15/13 Act | Wk 4 3/22/13 Act | Wk 5 3/29/13 Act | Wk 6 4/5/13 Act | Wk 7 4/12/13 Act | Wk 8 4/19/13 Bud | Wk 9 4/26/13 Bud | Wk 10 5/3/13 Bud | Wk 11 5/10/13 Bud | Wk 12 5/17/13 Bud | Wk 13 5/24/13 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | (311,483) | (312,245) | (312,245) | (316,165) | (316,277) | (322,889) | (325,889) | (353,559) | (353,559) | 59,873 | 17,373 | 17,373 | (10,827) | (311,483) |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Income | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| CAM & Insurance Adjustment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Security Deposit Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale Proceeds | - | - | - | - | - | - | - | - | 4,250,000 | - | - | - | - | 4,250,000 |
| **Total Cash Receipts** | - | - | - | - | - | - | - | - | 4,250,000 | - | - | - | - | 4,250,000 |
| **Cash Disbursements - Operations** | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | - | - | - | - | - | - | - | - | (2,500) | - | - | - | - | (2,500) |
| Supplies | - | - | - | - | - | - | - | - | (500) | - | - | - | - | (500) |
| HVAC | - | - | - | - | - | - | - | - | (1,000) | - | - | (1,500) | - | (2,500) |
| Management Fees | - | - | (3,000) | - | - | (3,000) | - | - | (3,000) | - | - | - | - | (9,000) |
| Professional Fee Reimb. (Restructuring) | - | - | - | - | - | - | (23,600) | - | - | - | - | - | - | (23,600) |
| Security | - | - | - | - | - | - | - | - | - | (2,500) | - | - | - | (2,500) |
| Insurance | (762) | - | (762) | - | (762) | - | - | - | (763) | - | - | - | - | (3,049) |
| New Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities (Note 1) | - | - | - | - | - | - | - | - | (40,000) | - | - | - | - | (40,000) |
| Legal Fees & Ordinary Course Professionals* | - | - | (158) | - | (5,850) | - | (1,607) | - | - | (4,500) | - | (5,500) | - | (17,615) |
| Misc. OpEx (Mileage, minor supplies, office) | - | - | - | (113) | - | - | (25) | - | (5,000) | - | - | - | - | (5,138) |
| Fees (Payroll, Bank, Service related)** | - | - | - | - | - | - | - | - | (81,550) | (500) | - | - | - | (82,050) |
| 3.25% Sale Commission | - | - | - | - | - | - | - | - | (138,125) | - | - | - | - | (138,125) |
| Security Deposit Liability | - | - | - | - | - | - | - | - | (35,000) | - | - | - | - | (35,000) |
| Secured Lender Prof Fees-Placeholder | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fee Holdbacks | - | - | - | - | - | - | - | - | (48,283) | - | - | - | (26,176) | (74,458) |
| IL Replacement Tax & Late Filing Penalties | - | - | - | - | - | - | - | - | (2,220) | - | - | (10,000) | - | (12,220) |
| Other Sale Expenses | - | - | - | - | - | - | - | - | (25,000) | - | - | - | - | (25,000) |
| Mechanic's Lien Creditor Reserve | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Post-Petition Payables | - | - | - | - | - | - | - | - | - | (35,000) | - | - | - | (35,000) |
| US Trustee Fees & Claims Agent | - | - | - | - | - | - | (2,438) | - | - | - | - | (11,200) | (4,200) | (17,838) |
| Property Tax | - | - | - | - | - | - | - | - | (189,278) | - | - | - | - | (189,278) |
| **Total Cash Disbursements - Operations** | (762) | - | (3,920) | (113) | (6,612) | (3,000) | (27,670) | - | (572,218) | (42,500) | - | (28,200) | (30,376) | (715,370) |
| **Total Cash Flow Before Debt Service** | (762) | - | (3,920) | (113) | (6,612) | (3,000) | (27,670) | - | 3,677,782 | (42,500) | 17,373 | (28,200) | (30,376) | 3,534,630 |
| **Debt Service & Other** | | | | | | | | | | | | | | |
| Debt Service - Principal | - | - | - | - | - | - | - | - | (3,264,350) | - | - | - | - | (3,264,350) |
| Debt Service - Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Debt Service & Other** | - | - | - | - | - | - | - | - | (3,264,350) | - | - | - | - | (3,264,350) |
| **Net Cash Flow** | (762) | - | (3,920) | (113) | (6,612) | (3,000) | (27,670) | - | 413,432 | (42,500) | - | (28,200) | (30,376) | 270,280 |
| **Cash Balance, Ending** | (312,245) | (312,245) | (316,165) | (316,277) | (322,889) | (325,889) | (353,559) | (353,559) | 59,873 | 17,373 | 17,373 | (10,827) | (41,203) | (41,203) |

\* Legal & OCP fees in week 12 are payment of 2012/2013 tax preparation to Brad Dooley & Associates.
\*\* 2nd half of lease commission of $81,550 in week 9 payable upon opening of tenant's business

Note 1: Amount unknown and currently being researched.

| Estimated Debt (recent MB application of payments between P&I is needed) | Wk 1 | Wk 2 | Wk 3 | Wk 4 | Wk 5 | Wk 6 | Wk 7 | Wk 8 | Wk 9 | Wk 10 | Wk 11 | Wk 12 | Wk 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 735,650 | 735,650 | 735,650 | 735,650 | 4,000,000 |
| Principal payments | - | - | - | - | - | - | - | - | (3,264,350) | - | - | - | - | (3,264,350) |
| Ending Balance | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 4,000,000 | 735,650 | 735,650 | 735,650 | 735,650 | 735,650 | 735,650 |

Avadamma LLC - Meadowbrook
13wk Cash Flow Projections
For the Period from February 25, 2013 to May 24, 2013

Major Tenant:            Third Party Tenants
Bld Sq. Footage:         188,014

| CASH FORECAST for the week ending | Wk 1 3/1/13 Act | Wk 2 3/8/13 Act | Wk 3 3/15/13 Act | Wk 4 3/22/13 Act | Wk 5 3/29/13 Act | Wk 6 4/5/13 Act | Wk 7 4/12/13 Act | Wk 8 4/19/13 Bud | Wk 9 4/26/13 Bud | Wk 10 5/3/13 Bud | Wk 11 5/10/13 Bud | Wk 12 5/17/13 Bud | Wk 13 5/24/13 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | (8,830) | (11,568) | (4,556) | 1,050 | 9,467 | 3,254,666 | 364,964 | 214,499 | 121,848 | 120,098 | 103,247 | 103,247 | 80,747 | (8,830) |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Income | 8,669 | 23,282 | 24,050 | 18,667 | - | 8,601 | (38,550) | - | - | - | - | - | 80,747 | 44,719 |
| CAM & Insurance Adjustment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Security Deposit Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| RE Tax Reimbursement | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale Proceeds | - | - | - | - | 3,880,000 | 470,000 | - | - | - | - | - | - | - | 4,350,000 |
| **Total Cash Receipts** | 8,669 | 23,282 | 24,050 | 18,667 | 3,880,000 | 478,601 | (38,550) | - | - | - | - | - | 80,747 | 4,394,719 |
| **Cash Disbursements - Operations** | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | (3,192) | (1,975) | (1,813) | (2,024) | (16,075) | (3,468) | (1,075) | (10,000) | - | - | - | - | - | (23,548) |
| Snow Removal Costs | - | (8,805) | - | - | - | - | (930) | - | - | - | - | - | - | (25,810) |
| Supplies | - | - | - | - | - | - | - | (500) | - | - | - | - | - | (500) |
| HVAC | - | - | - | (73) | - | (50) | - | - | - | - | - | - | - | (123) |
| Management Fees | - | - | (10,500) | - | - | (10,500) | (29,500) | - | - | (10,500) | - | - | - | (31,500) |
| Professional Fee Reimb. (Restructuring) | - | - | - | - | - | - | - | - | - | - | - | - | - | (29,500) |
| Security | (4,351) | - | (1,010) | (335) | - | (1,331) | - | - | - | - | - | - | - | (2,676) |
| Insurance | (2,888) | (3,482) | (4,351) | (414) | (4,351) | - | - | - | - | (4,352) | - | - | - | (17,405) |
| New Capital Expenditures | (977) | (2,008) | (230) | (7,292) | (736) | (213) | (217) | - | (1,750) | - | - | - | - | (6,997) |
| Utilities | - | - | (539) | (113) | (5,850) | (2,528) | (487) | (5,750) | - | (2,000) | - | (5,500) | - | (21,488) |
| Legal Fees & Ordinary Course Professionals* | - | - | - | - | - | - | - | (2,500) | - | - | - | (2,000) | - | (16,877) |
| Misc. OpEx (Mileage, minor supplies, office) | - | - | - | - | - | - | - | (3,000) | - | - | - | - | - | (5,326) |
| Fees (Payroll, Bank, Service related) | - | - | - | - | (141,375) | - | (77,269) | (7,362) | - | - | - | - | - | (84,631) |
| 3.25% Sale Commission | - | - | - | - | (80,382) | - | - | - | - | - | - | - | - | (141,375) |
| Secured Lender Prof Fees-Placeholder | - | - | - | - | - | - | - | - | - | - | - | - | - | (80,382) |
| Professional Fee Holdbacks | - | - | - | - | - | - | - | (60,353) | - | - | - | - | - | (121,775) |
| IL Replacement Tax & Late Filing Penalties | - | - | - | - | - | - | - | (3,185) | - | - | - | (10,000) | (61,422) | (13,185) |
| Other Sale Expenses | - | - | - | - | (17,271) | - | - | - | - | - | - | - | - | (17,271) |
| Mechanic's Lien Creditor Reserve | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Post-Petition Payables | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| US Trustee Fees & Claims Agent | - | - | - | - | - | (2,438) | - | - | - | - | - | (5,000) | (4,200) | (11,638) |
| Property Tax | - | - | - | - | (368,760) | - | - | - | - | - | - | - | - | (368,760) |
| **Total Cash Disbursements - Operations** | (11,407) | (16,270) | (18,443) | (10,250) | (634,800) | (18,303) | (150,466) | (92,650) | (1,750) | (16,852) | - | (22,500) | (65,622) | (1,020,765) |
| **Total Cash Flow Before Debt Service** | (2,739) | 7,012 | 5,606 | 8,417 | 3,245,200 | 460,298 | (150,466) | (92,650) | (1,750) | (16,852) | - | (22,500) | (65,622) | 3,373,954 |
| **Debt Service & Other** | | | | | | | | | | | | | | |
| Debt Service - Principal** | - | - | - | - | - | (3,350,000) | - | - | - | - | - | - | - | (3,350,000) |
| Debt Service - Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Debt Service & Other** | - | - | - | - | - | (3,350,000) | - | - | - | - | - | - | - | (3,350,000) |
| **Net Cash Flow** | (2,739) | 7,012 | 5,606 | 8,417 | 3,245,200 | (2,889,702) | (150,466) | (92,650) | (1,750) | (16,852) | - | (22,500) | (65,622) | 23,954 |
| **Cash Balance, Ending** | (11,568) | (4,556) | 1,050 | 9,467 | 3,254,666 | 364,964 | 214,499 | 121,848 | 120,098 | 103,247 | 103,247 | 80,747 | 15,125 | 15,125 |

* Legal & OCP fees in week 12 are payment of 2012/2013 tax preparation to Brad Dooley & Associates.
* Legal & OCP fees in week 8 are to Jeffrey Horwitz for legal services related to property management and lease and tenant issues.

3 Properties: North Park, Meadowbrook, University Plaza
Estimated Debt (recent MB application of payments between P&I is needed)

| | Wk 1 3/1/13 | Wk 2 3/8/13 | Wk 3 3/15/13 | Wk 4 3/22/13 | Wk 5 3/29/13 | Wk 6 4/5/13 | Wk 7 4/12/13 | Wk 8 4/19/13 | Wk 9 4/26/13 | Wk 10 5/3/13 | Wk 11 5/10/13 | Wk 12 5/17/13 | Wk 13 5/24/13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 31,126,194 | 31,126,194 | 31,126,194 | 31,126,194 | 31,126,194 | 31,126,194 | 20,776,194 | 20,776,194 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 | 31,126,194 |
| Principal payments | - | - | - | - | - | (10,350,000) | (8,087,158) | - | - | - | - | - | - | (18,437,158) |
| Ending Balance | 31,126,194 | 31,126,194 | 31,126,194 | 31,126,194 | 31,126,194 | 20,776,194 | 20,776,194 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 | 12,689,036 |

Avadamma LLC - NorthPark
13wk Cash Flow Projections
For the Period from February 25, 2013 to May 24, 2013

Major Tenant:
Bld Sq. Footage:

Third Party Tenants
353,020

| CASH FORECAST for the week ending | Wk 1 3/1/13 Act | Wk 2 3/8/13 Act | Wk 3 3/15/13 Act | Wk 4 3/22/13 Act | Wk 5 3/29/13 Act | Wk 6 4/5/13 Act | Wk 7 4/12/13 Act | Wk 8 4/19/13 Bud | Wk 9 4/26/13 Bud | Wk 10 5/3/13 Bud | Wk 11 5/10/13 Bud | Wk 12 5/17/13 Bud | Wk 13 5/24/13 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | 288,490 | 277,656 | 346,871 | 319,055 | 304,390 | 291,225 | 320,576 | 364,906 | 333,896 | 158,396 | 136,809 | 132,309 | 96,009 | 288,490 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Income | 9,486 | 78,972 | 4,579 | - | 4,614 | 51,484 | 91,288 | - | - | - | - | - | - | 240,424 |
| CAM & Insurance Adjustment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Security Deposit Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| RE Tax Reimbursement | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale Proceeds | - | - | - | - | - | - | - | 8,800,000 | - | - | - | - | - | 8,800,000 |
| Total Cash Receipts | 9,486 | 78,972 | 4,579 | - | 4,614 | 51,484 | 91,288 | 8,800,000 | - | - | - | - | - | 9,040,424 |
| **Cash Disbursements - Operations** | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | (2,226) | (8,849) | (1,033) | (975) | - | (5,563) | (4,622) | - | (20,000) | - | - | - | - | (43,268) |
| Snow Removal Costs | (4,050) | - | (2,650) | (2,850) | (3,645) | (1,530) | - | - | - | - | - | - | - | (14,725) |
| Supplies | - | - | - | (327) | - | (91) | (93) | - | (2,500) | - | - | - | - | (3,010) |
| HVAC | - | - | - | - | - | (39) | - | - | (2,000) | - | - | - | - | (2,039) |
| Management Fees | - | - | (14,000) | - | - | (14,000) | - | - | - | (14,000) | - | - | - | (42,000) |
| Professional Fee Reimb. (Restructuring) | - | - | - | - | - | - | (35,400) | - | - | - | - | - | - | (35,400) |
| Security | (1,025) | (908) | (535) | - | (698) | (698) | (260) | (3,000) | - | - | (4,500) | - | - | (11,623) |
| Insurance | (7,586) | - | (7,586) | - | (7,586) | - | - | - | - | (7,587) | - | - | - | (30,345) |
| New Capital Expenditures | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities | (5,433) | - | (2,304) | (10,401) | (5,850) | - | (2,930) | - | (20,000) | - | - | - | - | (46,068) |
| Legal Fees & Ordinary Course Professionals* | - | - | (644) | - | - | - | (487) | (2,500) | - | - | - | (12,500) | - | (16,982) |
| Misc. OpEx (Mileage, minor supplies, office) | - | - | (3,643) | (113) | - | (213) | (725) | (2,000) | (3,000) | - | - | - | - | (9,694) |
| Fees (Payroll, Bank, Service related) | - | - | - | - | - | - | (5) | - | (2,000) | - | - | - | - | (2,005) |
| 2% break-up fee & 3.25% sale commission** | - | - | - | - | - | - | - | (286,000) | (126,000) | - | - | - | - | (412,000) |
| Security Deposit Liability | - | - | - | - | - | - | - | (69,141) | - | - | - | - | - | (69,141) |
| Secured Lender Prof Fees-Placeholder | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fee Holdbacks | - | - | - | - | - | - | - | (72,424) | - | - | - | - | (58,844) | (131,268) |
| IL Replacement Tax & Late Filing Penalties | - | - | - | - | - | - | - | (31,774) | - | - | - | (10,000) | - | (41,774) |
| Other Sale Expenses | - | - | - | - | - | - | - | (33,333) | - | - | - | - | - | (33,333) |
| Mechanic's Lien Creditor Reserve | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Other Post-Petition Payables | - | - | - | - | - | - | - | (35,961) | - | - | - | - | - | (35,961) |
| US Trustee Fees & Claims Agent | - | - | - | - | - | - | (2,438) | - | - | - | - | (13,800) | (4,200) | (20,438) |
| Property Tax | - | - | - | - | - | - | - | (207,719) | - | - | - | - | - | (207,719) |
| Total Cash Disbursements - Operations | (20,320) | (9,757) | (32,395) | (14,665) | (17,779) | (22,133) | (46,958) | (743,853) | (175,500) | (21,587) | (4,500) | (36,300) | (63,044) | (1,206,792) |
| Total Cash Flow Before Debt Service | (10,834) | 69,215 | (27,816) | (14,665) | (13,165) | 29,351 | 44,330 | 8,056,147 | (175,500) | (21,587) | (4,500) | (36,300) | (63,044) | 7,831,632 |
| **Debt Service & Other** | | | | | | | | | | | | | | |
| Debt Service - Principal | - | - | - | - | - | - | - | (8,087,158) | - | - | - | - | - | (8,087,158) |
| Debt Service - Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Debt Service & Other | - | - | - | - | - | - | - | (8,087,158) | - | - | - | - | - | (8,087,158) |
| Net Cash Flow | (10,834) | 69,215 | (27,816) | (14,665) | (13,165) | 29,351 | 44,330 | (31,011) | (175,500) | (21,587) | (4,500) | (36,300) | (63,044) | (255,526) |
| Cash Balance, Ending | 277,656 | 346,871 | 319,055 | 304,390 | 291,225 | 320,576 | 364,906 | 333,896 | 158,396 | 136,809 | 132,309 | 96,009 | 32,965 | 32,965 |

* Legal & OCP fees in week 12 are payment of 2012/2013 tax preparation to Brad Dooley & Associates.
* Legal & OCP fees in week 8 are to Jeffrey Horwitz for legal services related to property management and lease and tenant issues.

Avadamma LLC - University Plaza
13wk Cash Flow Projections
*For the Period from February 25, 2013 to May 24, 2013*

Major Tenant: GCS/UES/APF/USS, & Several Third Party Tenants
Bld Sq. Footage: 213,657

| CASH FORECAST for the week ending | Wk 1 3/1/13 Act | Wk 2 3/8/13 Act | Wk 3 3/15/13 Act | Wk 4 3/22/13 Act | Wk 5 3/29/13 Act | Wk 6 4/5/13 Act | Wk 7 4/12/13 Act | Wk 8 4/19/13 Bud | Wk 9 4/26/13 Bud | Wk 10 5/3/13 Bud | Wk 11 5/10/13 Bud | Wk 12 5/17/13 Bud | Wk 13 5/24/13 Bud | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance, Beginning | 233,103 | 246,283 | 283,598 | 263,288 | 260,862 | 6,728,231 | 627,968 | 557,935 | 465,941 | 368,365 | 344,877 | 344,877 | 324,377 | 233,103 |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Rental Income | 28,947 | 60,351 | 10,135 | - | 101,592 | 40,049 | (10,000) | - | - | - | - | - | - | 231,073 |
| CAM & Insurance Adjustment | - | (8,000) | - | - | - | - | - | - | - | - | - | - | - | (8,000) |
| Security Deposit Receipts | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| RE Tax Reimbursement | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Sale Proceeds | - | - | - | - | 7,136,600 | 1,013,400 | - | - | - | - | - | - | - | 8,150,000 |
| Total Cash Receipts | 28,947 | 52,351 | 10,135 | - | 7,238,192 | 1,053,449 | (10,000) | - | - | - | - | - | - | 8,373,073 |
| **Cash Disbursements - Operations** | | | | | | | | | | | | | | |
| Maintenance/Repair (Routine) | - | (2,645) | (72) | - | (330) | (196) | - | - | (5,000) | - | - | - | - | (8,242) |
| Snow Removal Costs | (2,820) | - | (2,030) | (2,310) | (3,270) | (1,050) | - | - | - | - | - | - | - | (11,480) |
| Supplies | - | (326) | - | - | - | (24) | - | - | (500) | - | - | - | - | (849) |
| HVAC | - | (492) | - | (4) | - | (111) | (93) | - | - | - | - | - | - | (699) |
| Management Fees | - | - | (18,500) | - | - | (18,500) | - | - | - | (18,500) | - | - | - | (55,500) |
| Professional Fee Reimb. (Restructuring) | - | - | - | - | - | - | (41,300) | - | - | - | - | - | - | (41,300) |
| Security | (1,060) | (8,936) | - | - | - | - | (240) | - | - | - | - | - | - | (10,236) |
| Insurance | (4,988) | - | (4,988) | - | (4,988) | - | - | - | - | (4,988) | - | - | - | (19,952) |
| New Capital Expenditures | - | (860) | (1,015) | - | - | - | - | - | - | - | - | - | - | (1,875) |
| Utilities | (6,899) | (1,778) | (2,725) | - | (2,925) | (2,618) | (15,460) | - | (10,000) | - | - | - | - | (42,405) |
| Legal Fees & Ordinary Course Professionals* | - | - | (1,117) | - | (5,850) | - | (487) | (2,500) | (2,000) | - | - | (5,500) | - | (17,454) |
| Misc. OpEx (Mileage, minor supplies, office) | - | - | - | (113) | - | (213) | - | - | (5,000) | - | - | - | - | (5,326) |
| Fees (Payroll, Bank, Service related) | - | - | - | - | (15) | - | (15) | - | - | - | - | - | - | (30) |
| 2% break-up fee & 3.25% sale commission** | - | - | - | - | (264,875) | (131,000) | - | - | - | - | - | - | - | (395,875) |
| Security Deposit Liability | - | - | - | - | (113,629) | - | - | - | - | - | - | - | - | (113,629) |
| Secured Lender Prof Fees-Placeholder | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Professional Fee Holdbacks | - | - | - | - | - | - | - | (84,495) | - | - | - | - | (52,606) | (137,100) |
| IL Replacement Tax & Late Filing Penalties | - | - | - | - | - | - | - | (5,000) | - | - | - | (10,000) | - | (15,000) |
| Other Sale Expenses | - | - | - | - | (48,971) | - | - | - | - | - | - | - | - | (48,971) |
| Mechanic's Lien Creditor Reserve | - | - | - | - | - | - | - | - | (27,000) | - | - | - | - | (27,000) |
| Other Post-Petition Payables | - | - | - | - | - | - | - | - | (48,076) | - | - | - | - | (48,076) |
| US Trustee Fees & Claims Agent | - | - | - | - | - | - | (2,438) | - | - | - | - | (5,000) | (4,200) | (11,638) |
| Property Tax | - | - | - | - | (325,969) | - | - | - | - | - | - | - | - | (325,969) |
| Total Cash Disbursements - Operations | (15,767) | (15,036) | (30,446) | (2,426) | (770,823) | (153,712) | (60,032) | (91,995) | (97,576) | (23,488) | - | (20,500) | (56,806) | (1,338,605) |
| Total Cash Flow Before Debt Service | 13,180 | 37,315 | (20,310) | (2,426) | 6,467,369 | 899,737 | (70,032) | (91,995) | (97,576) | (23,488) | - | (20,500) | (56,806) | 7,034,468 |
| **Debt Service & Other** | | | | | | | | | | | | | | |
| Debt Service - Principal | - | - | - | - | - | (7,000,000) | - | - | - | - | - | - | - | (7,000,000) |
| Debt Service - Interest | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Total Debt Service & Other | - | - | - | - | - | (7,000,000) | - | - | - | - | - | - | - | (7,000,000) |
| Net Cash Flow | 13,180 | 37,315 | (20,310) | (2,426) | 6,467,369 | (6,100,263) | (70,032) | (91,995) | (97,576) | (23,488) | - | (20,500) | (56,806) | 34,468 |
| Cash Balance, Ending | 246,283 | 283,598 | 263,288 | 260,862 | 6,728,231 | 627,968 | 557,935 | 465,941 | 368,365 | 344,877 | 344,877 | 324,377 | 267,571 | 267,571 |

* Legal & OCP fees in week 12 are payment of 2012/2013 tax preparation to Brad Dooley & Associates.
* Legal & OCP fees in week 8 are to Jeffrey Horwitz for legal services related to property management and lease and tenant issues.