## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| QUALTEQ, INC., | ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC., *et al.*,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Hearing Date: July 23, 2013, |
| | ) | at 9:30 a.m. (prevailing Central Time) |

## NOTICE OF THE CHAPTER 11 TRUSTEE'S FOURTH INTERIM AND FINAL FEE APPLICATION FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 10, 2012 THROUGH MAY 3, 2013 AND MAY 31, 2013, RESPECTIVELY

**PLEASE TAKE NOTICE** that on **July 23, 2013, at 9:30 a.m. (prevailing Central Time)** or as soon thereafter as counsel may be heard, we shall appear before the Honorable Eugene R. Wedoff in Courtroom 744 in the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before any other judge who may be sitting in his place and stead, and present the *Chapter 11 Trustee's Fourth Interim and Final Fee Application for Allowance of Compensation and for Reimbursement of Actual and Necessary Expenses Incurred for the Period May 10, 2012 Through May 3, 2013 and May 31, 2013, Respectively* (the "Application"), at which time and place you may appear if you so desire.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (a) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (b) 1400 Centre Circle, LLC (7091); (c) 5200 Thatcher, LLC (6991); (d) 5300 Katrine, LLC (6016); (e) Anar Real Estate, LLC (9267); (f) Automated Presort, Inc. (0850); (g) Avadamma LLC (4775; 4800; 4810; 4829); (h) Creative Automation Company (4350); (i) Creative Investments, a General Partnership (5992); (j) Fulfillment Xcellence, Inc. (3461); (k) Global Card Services, Inc. (4581); (l) Unique Data Services, Inc. (1068); (m) Unique Embossing Services, Inc. (1043); (n) Unique Mailing Services, Inc. (2594); (o) Versatile Card Technology, Inc. (5258); (p) Veluchamy LLC (3434); and (q) Vmark, Inc. (5904).

**PLEASE TAKE FURTHER NOTICE** that you may obtain additional information concerning the above-captioned chapter 11 cases at the website maintained in these chapter 11 cases at http://www.phaseeleven.com/qualteq/.

Dated: July 2, 2013                    Respectfully Submitted,

                                       */s/ David L. Eaton*
                                       James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
                                       David L. Eaton (IL Bar No. 3122303)
                                       Ryan Preston Dahl (IL Bar No. 6292645)
                                       **KIRKLAND & ELLIS LLP**
                                       300 North LaSalle Street
                                       Chicago, Illinois  60654
                                       Telephone: (312) 862-2000
                                       Facsimile:  (312) 862-2200

                                       *Counsel to the Chapter 11 Trustee*

K&E 26895708

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUALTEQ, INC., | ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC., *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | Hearing Date:  July 23, 2013, |
|  | ) | at 9:30 a.m. (prevailing Central Time) |
|  | ) |  |

## COVER SHEET FOR THE CHAPTER 11 TRUSTEE'S FOURTH INTERIM AND FINAL FEE APPLICATION FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 10, 2012 THROUGH MAY 3, 2013 AND MAY 31, 2013, RESPECTIVELY

| | |
|---|---|
| Name of Applicant: | Fred C. Caruso, solely in his capacity as the chapter 11 trustee (the "Trustee") in the chapter 11 cases of Qualteq, Inc., d/b/a VCT New Jersey, Inc. ("Qualteq") and its affiliated chapter 11 debtors (collectively, with Qualteq, the "Debtors") |
| Authorized to Provide Professional Services to: | The Debtors' Estates |
| Date of Retention: | May 10, 2012 [Docket No. 351] |
| Period for Which Commission Is Sought: | May 10, 2012 through May 3, 2013 (with respect to all Debtors), and May 4, 2013 through May 31, 2013 (solely with respect to Avadamma, LLC and Creative Investments)[2] |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (a) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (b) 1400 Centre Circle, LLC (7091); (c) 5200 Thatcher, LLC (6991); (d) 5300 Katrine, LLC (6016); (e) Anar Real Estate, LLC (9267); (f) Automated Presort, Inc. (0850); (g) Avadamma, LLC (4775; 4800; 4810; 4829); (h) Creative Automation Company (4350); (i) Creative Investments, a General Partnership (5992); (j) Fulfillment Xcellence, Inc. (3461); (k) Global Card Services, Inc. (4581); (l) Unique Data Services, Inc. (1068); (m) Unique Embossing Services, Inc. (1043); (n) Unique Mailing Services, Inc. (2594); (o) Versatile Card Technology, Inc. (5258); (p) Veluchamy LLC (3434); and (q) Vmark, Inc. (5904).

[2] Because the Plan (as defined herein) was not consummated until after May 31, 2013 for Avadamma, LLC, the Trustee intends to supplement this Application for compensation and expenses requested for Avadamma, LLC through the Plan effective date for Avadamma within the deadlines established by the Plan. Because a chapter 11 plan has not been consummated for Creative Investments, an Illinois general partnership ("Creative Investments"), the Trustee has submitted this Application for compensation and expenses incurred with respect to Creative Investments on an interim basis only for the time period from May 4, 2013 through May 31, 2013.

| Total Commission Sought to be Allowed on a Final Basis: | $4,017,267.31 |
|---|---|

This is a:  __ monthly  X  interim  X  final application.

This is the Trustee's fourth interim and final fee application in this case.

### Summary of Trustee's Fee Statements Filed to Date

| Date & Docket No. | Filing Period | Requested Fees | Requested Expenses | CNO/Order Date & Docket No. | Approved Fees | Approved Expenses | Holdback |
|---|---|---|---|---|---|---|---|
| 06/25/12 [447] | 05/10/12 through 05/31/12 | $209,744.00 | $2,497.02 | 07/19/12 [502] | $167,795.20 | $2,497.02 | $41,948.80 |
| 07/25/12 [515] | 06/01/12 through 06/30/12 | $328,638.00 | $4,395.63 | 08/15/12 [571] | $262,910.40 | $4,395.63 | $65,727.60 |
| 08/24/12 [607] | 07/01/12 through 07/31/12 | $299,678.00 | $2,260.88 | 09/20/12 [692] | $239,742.40 | $2,260.88 | $59,935.60 |
| 09/25/12 [720] | 08/01/12 through 08/31/12 | $345,769.00 | $4,766.42 | 10/18/12 [804] | $276,615.20 | $4,070.56 | $69,153.80 |
| **First Interim App.** **10/15/12** **[792]** | **05/10/12 through 08/31/12** | **$1,183,829.00** | **$13,919.95** | **11/6/12** **[888]** | **$1,183,829.00** | **$13,224.09** | **$0.00** |
| 10/25/12 [815] | 09/01/12 through 09/30/12 | $333,065.00 | $4,558.62 | 11/19/12 [916] | $266,452.00 | $4,535.12 | $66,613.00 |
| 11/26/12 [924] | 10/01/12 through 10/31/12 | $367,483.50 | $2,348.44 | 12/18/12 [970] | $293,986.80 | $2,348.44 | $73,496.70 |

The Trustee will continue to file monthly applications for compensation and expenses for Creative Investments in compliance with the Interim Compensation Order.

2

| Date & Docket No. | Filing Period | Requested Fees | Requested Expenses | CNO/Order Date & Docket No. | Approved Fees | Approved Expenses | Holdback |
|---|---|---|---|---|---|---|---|
| 12/18/2012 [973] | 11/01/12 through 11/30/12 | $296,438.50 | $3,462.75 | 01/07/12 [1002] | $237,150.80 | $3,462.75 | $59,287.70 |
| **Second Interim App.** **01/22/2013 [1036]** | **09/01/12 through 11/30/12** | **$996,987.00** | **$10,369.81** | **02/13/2013 [1165]** | **$996,987.00** | **$10,346.41** | **$0.00** |
| 01/25/2013 [1051] | 12/01/2012 through 12/31/2012 | $184,819.50 | $4,821.22 | 02/15/2013 [1171] | $147,855.60 | $4,821.22 | $36,963.90 |
| 02/12/2013 [1141] | 01/01/2013 through 01/31/2013 | $271,118.50 | $7,511.08 | 03/04/2013 [1252] | $216,894.80 | $7,511.08 | $54,223.70 |
| 03/25/2013 [1414] | 02/01/2013 through 02/28/2013 | $193,909.50 | $1,278.97 | 04/16/2013 [1502] | $155,127.60 | $1,278.97 | $38,781.90 |
| **Third Interim App.** **04/22/2013 [1547]** | **12/01/2012 through 02/28/2013** | **$649,847.50** | **$13,611.27** | **N/A** | **$649,847.50** | **$13,611.27** | **$0.00** |
| 04/12/2013 [1480] | 03/01/2013 through 03/31/2013 | $188,956.50 | $902.60 | 05/02/2013 [1602] | $151,165.20 | $902.60 | $37,791.30 |
| 05/14/2013 [1657] | 04/01/2013 through 04/30/2013 | $183,025.50 | $1,628.44 | 06/03/2013 [1714] | $146,420.40 | $1,628.44 | $36,605.10 |
| 06/17/13 [1759] | 05/01/2013 through 05/03/2013[3] | $24,870.00 | $39.10 | Objection Deadline 07/08/2013 | n/a | n/a | $4,974.00 |
| 06/17/13 [1759] | 05/04/2013 through 05/31/2013[4] | $13,936.50 | $281.36 | Objection Deadline 07/08/2013 | n/a | n/a | $2,787.30 |

---

[3]    For all Debtors.

[4]    For post-May 3, 2013 amounts owing to Avadamma, LLC, and Creative Investments.

3

| Date & Docket No. | Filing Period | Requested Fees | Requested Expenses | CNO/Order Date & Docket No. | Approved Fees | Approved Expenses | Holdback |
|---|---|---|---|---|---|---|---|
| **Totals for Fourth Interim App.** | **03/01/2013 through 05/31/2013** | **$410,788.50** | **$2,851.50** | **N/A** | **$328,630.80** | **$2,851.50** | **$82,157.70** |

### Totals for Final Fee Application Period
May 10, 2012 through May 3, 2013

| | |
|---|---|
| **Amount Distributed to Creditors per 11 U.S.C. § 326(a)** | **$214,870,709.00** |
| **Total Commission Available Under 11 U.S.C. § 326(a)** | **$6,794,871.00** |
| **Amount of Commission Requested on a Final Basis Through May 3, 2013** | **$3,267,267.31[5]** |
| **Additional Unpaid Commission Requested** | **$750,000.00** |
| **Total Amount Requested for Final Fee Application Period** | **$4,017,267.31** |
| **Commission Voluntarily Waived (before expenses)** | **$3,101,806.00[6]** |

Dated: July 2, 2013

Respectfully Submitted,

*/s/ David L. Eaton*

James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
David L. Eaton (IL Bar No. 3122303)
Ryan Preston Dahl (IL Bar No. 6292645)
**KIRKLAND & ELLIS LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to the Chapter 11 Trustee*

---

[5]     Comprised of $3,227,515.50 in fees incurred and $39,751.81 in expenses.

[6]     The calculation setting forth the total commission allowable pursuant to section 326(a) of the Bankruptcy Code is set forth at **Exhibit D** to the Application.

4

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| QUALTEQ, INC., | ) | Case No. 12-05861 (ERW) |
| d/b/a VCT NEW JERSEY, INC., *et al.*,[1] | ) |  |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) | Hearing Date: July 23, 2013, at |
|  | ) | 9:30 a.m. (prevailing Central Time) |

## CHAPTER 11 TRUSTEE'S FOURTH INTERIM AND FINAL FEE APPLICATION FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES INCURRED FOR THE PERIOD MAY 10, 2012 THROUGH MAY 3, 2013, AND MAY 31, 2013, RESPECTIVELY

Fred C. Caruso, solely in his capacity as the chapter 11 trustee (the "Trustee") in the chapter 11 cases of Qualteq, Inc., d/b/a VCT New Jersey, Inc. ("Qualteq") and its affiliated chapter 11 debtors (collectively, with Qualteq, the "Debtors"), hereby: (i) submits this fourth interim and final fee application (this "Application") pursuant to 11 U.S.C. §§ 326(a), 330, and 331, and in accordance with the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members* [Delaware Docket No. 125], as amended by [Docket No. 411] (the "Interim Compensation Order"), seeking final allowance of a total commission for services rendered of $3,977,515.50 and for reimbursement of expenses incurred by the Trustee of $39,751.81 in these chapter 11 cases,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: (a) Qualteq, Inc., d/b/a VCT New Jersey, Inc. (4600); (b) 1400 Centre Circle, LLC (7091); (c) 5200 Thatcher, LLC (6991); (d) 5300 Katrine, LLC (6016); (e) Anar Real Estate, LLC (9267); (f) Automated Presort, Inc. (0850); (g) Avadamma LLC (4775; 4800; 4810; 4829); (h) Creative Automation Company (4350); (i) Creative Investments, a General Partnership (5992); (j) Fulfillment Xcellence, Inc. (3461); (k) Global Card Services, Inc. (4581); (l) Unique Data Services, Inc. (1068); (m) Unique Embossing Services, Inc. (1043); (n) Unique Mailing Services, Inc. (2594); (o) Versatile Card Technology, Inc. (5258); (p) Veluchamy LLC (3434); and (q) Vmark, Inc. (5904).

which reflecting a voluntary reduction by the Trustee of $3,101,806.00 (before expenses)[2] versus

the $6,794,871.00 commission allowable under the statutory fee formula fixed by section 326(a)

of the Bankruptcy Code.[3]

## **Preliminary Statement**

1.      By this Application, the Trustee respectfully seeks entry of an order, substantially

in the form attached hereto as **Exhibit A**: (a) allowing, on an interim basis, compensation for

professional services rendered and reimbursement of actual and necessary expenses incurred in

the amount of $410,788.50 for the period March 1, 2013, through and including May 31, 2013,

(the "Fourth Interim Fee Period"), for all Debtors;[4] (b) authorizing payment on the full amounts

requested in the Monthly Applications (as defined herein) for the Fourth Interim Fee Period,

including the 20 percent holdback of fees provided for in the Interim Compensation Order;

(c) allowing, on a final basis, the Trustee's commission for professional services rendered and

reimbursement of actual and necessary expenses incurred in the amount of $4,017,267.31 for the

---

[2]     **Exhibit D** attached hereto sets forth the maximum commission allowable pursuant to section 326(a) of the Bankruptcy Code.

[3]     Any amounts allowed to be paid to the Trustee for services rendered during the Final Fee Period (as defined herein), over and above the invoiced amounts, will be from the estates of Unique Mailing Services, Inc.; Veluchamy, LLC; Qualteq, Inc., d/b/a VCT New Jersey, Inc.; Automated Presort, Inc.; Creative Automation Company; Fulfillment Xcellence, Inc.; Global Card Services, Inc.; Unique Data Services, Inc.; Unique Embossing Services, Inc.; Versatile Card Technology, Inc.; and Vmark, Inc. (the "OpCo Debtors")—i.e., not the estates of Avadamma, LLC or Creative Investments, where general unsecured creditors are not currently projected to receive a distribution.

[4]     On May 3, 2013 (the "Effective Date"), the Trustee consummated the *Chapter 11 Trustee's First Amended Joint Plan of Liquidation for Qualteq, Inc.,d/b/a VCT New Jersey and Certain of Its Affiliated Chapter 11 Debtors Pursuant to Chapter 11 of the Bankruptcy Code (With Technical Amendments)* [Docket No. 1530] (the "Plan") for each of the applicable Debtors other than Avadamma, LLC.  Creative Investments, an above-captioned Debtor, is not subject to the Plan.  The Trustee consummated the Plan with respect to Avadamma on June 27, 2013.  Accordingly, this Application requests final allowance for all fees and reimbursable expenses incurred through May 3, 2013, but this Application requests only interim allowance with respect to fees and reimbursable expenses incurred on behalf of Avadamma and Creative Investments from May 4, 2013, through May 31, 2013, totaling $14,217.86.  The Trustee will seek final allowance with respect to such fees and expenses incurred on behalf of Avadamma within the deadlines established by the Plan.

2

period from May 10, 2012, through and including May 3, 2013 (the "Final Fee Period"), for all

Debtors; and (d) granting related relief.

2.      As noted above, the total compensation requested by the Trustee reflects a

voluntary reduction of approximately $3.1 million versus the total commission allowable under

section 326(a) of the Bankruptcy Code.[5]   The requested commission reflects approximately

$3.3 million of fees and expenses incurred by the Trustee on an hourly basis, plus an additional

$750,000 in compensation requested (the "Success Fee") in light of the outstanding results

achieved by the Trustee in these chapter 11 cases.

3.      The Trustee's requested commission fairly reflects the tremendous results

achieved by the Trustee on behalf of these chapter 11 estates.  Among other things, the Trustee:[6]

- stabilized the Debtors' core business operations and successfully transitioned key customer relationships;

- established clear financial, operational, and managerial controls in order to remedy longstanding reporting and managerial deficiencies that threatened to materially erode value;

- negotiated and consummated the sale of substantially all the Debtors' operating assets through a $51.2 million sale to Valid USA, Inc. ("Valid");

- preserved more than 1,200 employee jobs through the sale to Valid;

- undertook a highly successful real estate sale process that generated $36.4 million in sale proceeds through two separate auctions;

- successfully confirmed and consummated a chapter 11 plan in a process characterized by negotiation, consensus, and support from key stakeholders;

- reconciled substantially all third party claims prior to plan consummation, allowing for prompt stakeholder distributions;

---

[5]     The calculation setting forth the Trustee's $3.1 million waiver is set forth on **Exhibit D**.

[6]     The facts and circumstances set forth herein are described more fully in the *Declaration of Fred C. Caruso in Support of the Chapter 11 Trustee's Fourth Interim and Final Fee Application for Allowance of Compensation and for Reimbursement of Actual and Necessary Expenses Incurred for the Period May 10, 2012 Through May 3, 2013, and May 31, 2013, Respectively*, attached hereto as **Exhibit B**.

K&E 26895708

- repaid more than $78.1 million to creditors, including full repayments to substantially all of the operating Debtors' creditors and full repayment to four separate mortgage lenders; and

- expects to distribute an estimated $11.0 million of value on account of the Debtors' equity interests—if not more.

On this record, the Trustee respectfully submits that the total commission requested by this Application fairly reflects these achievements, particularly when compared against the total commission allowable available to the Trustee under section 326(a) of the Bankruptcy Code.

4.    The Trustee's requested compensation is also consistent with incentive-based compensation opportunities available to similarly-situated executives and advisors, both inside and outside of chapter 11.  Indeed, the Trustee has been serving as the Debtors' de facto Chief Executive Officer and Chief Restructuring Officer since May 2012.    Incentive-based compensation opportunities are a uniform aspect of compensation for officers serving in such capacities.  Tamara C. Belinfanti, Beyond Economics In Pay For Performance, 41 Hofstra L. Rev. 91, 101 (2012) ("[T]he typical executive compensation package is quite uniform across firms of varying sizes and industries . . . [and] consists of . . . performance based incentives.").

5.    It is also well recognized that incentive-based opportunities may appropriately compensate restructuring professionals for outstanding performance in chapter 11.  (See, e.g., Ex. C).[7]  Cf. 11 U.S.C.§ 328(a).  Indeed, this Court has approved a success fee for a chapter 11 trustee in recognition of outstanding results on at least one previous occasion.  See In re Giordano's Enters., Inc., Case No. 11-06098 (Bankr. N.D. Ill. Jan. 11, 2012) [Docket No 1101] (approving incremental $500,000 fee for chapter 11 trustee following successful sale process).

---

[7]    **Exhibit C** attached hereto includes examples of transaction fees or success fees approved for restructuring advisors in other chapter 11 cases.

K&E 26895708

6.      Here, the Trustee's total requested commission of approximately $4.0 million is approximately 59 percent of the $6.8 million commission allowable under section 326(a) of the Bankruptcy Code.  (See **Ex. D**.)  Admittedly, the Bankruptcy Code does not necessarily entitle a chapter 11 trustee to receive the maximum commission allowable under section 326(a) in every instance.  See 11 U.S.C. § 330(a)(3).  Yet the significant delta between the statutory maximum and the fees requested herein further establishes that the Trustee's total compensation is both fair and reasonable under the facts and circumstances of these chapter 11 cases.  See 11 U.S.C. § 330(a)(7).  The Trustee's blended hourly rate of $479.29 per hour, including the Success Fee, (see **Ex. D**), is also consistent with rates charged by comparable professionals providing financial advisory services in chapter 11, (see **Ex. C**).

7.      In short, the total commission requested by this Application on a final basis falls well-within the statutory limits fixed by section 326(a) of the Bankruptcy Code, is fair and reasonable in light of the outstanding results achieved in these chapter 11 cases, and is consistent with those compensation opportunities available for similarly situated officers and professionals. The Trustee therefore respectfully requests that the Court approve the total commission requested pursuant to this Application, including the Success Fee.

## Jurisdiction and Venue

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2).

9.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory bases for the relief requested herein are sections 326, 330, and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

K&E 26895708

Rule 5082-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules").

## Background

### A.     Events Leading Up to the Trustee's Appointment

11.     On August 14, 2011 (the "Initial Petition Date"), each of the Debtors except for Anar Real Estate, LLC ("Anar") filed petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.     On September 11, 2011 (the "Anar Petition Date," and together with the Initial Petition Date, the "Petition Date"), Anar filed a petition for relief with the United States Bankruptcy Court for the District of Delaware (the "Delaware Bankruptcy Court").

12.     On February 16, 2012, the Delaware Bankruptcy Court transferred venue to the United States Bankruptcy Court for the Northern District of Illinois (the "Court").

13.     On April 5, 2012, Bank of America, N.A., filed the *Motion to Appoint a Chapter 11 Trustee* [Docket No. 202], and on May 2, 2012, the Court entered the *Order Granting Motion for Appointment of a Chapter 11 Trustee* [Docket No. 334].

14.     On May 9, 2012, the U.S. Trustee filed an application to appoint Fred C. Caruso as chapter 11 trustee in these chapter 11 cases.  And on May 10, 2012 (the "Appointment Date"), the Court entered an order approving Mr. Caruso's appointment as the Trustee [Docket No. 351], thereby taking the Debtors and their assets out of possession and placing their assets and businesses under the Trustee's control.

### B.     State of the Debtors' Affairs as of the Trustee's Appointment

15.     The Trustee' immediate task upon being appointed was to survey the landscape of the Debtors' business affairs.  In this process, the Trustee determined that, although the Debtors' businesses were generally profitable, an array of problems threatened to materially impair value.

6

Put simply, the Debtors' financial and operating reporting systems were not commensurate with the requirements of a $100 million revenue business.  None of the Debtors' businesses had a business plan, nor could any one of the Debtors' operating businesses generate a one-year financial statement forecast or a customer profitability analysis—i.e., fundamental tools for any business of comparable size and scope.  The Debtors also did not have financial controls and reporting systems that would typically be in place for comparable businesses.

16.    Similarly, key records were either missing or did not exist, and those that did exist were materially inadequate for such a large and complex enterprise.  The Trustee further determined that many of the Debtors' historic financial statements contained misstatements or were missing key financial information.  Moreover, the more than nine-month overhang of the Debtor's chapter 11 cases had begun to cause material instability among the Debtors' customer base.  Needless to say, uncertainty (or lack of credibility) with respect to the Debtors' historical financial records, performance, and customers could have easily chilled buyer interest in the Debtors' operating assets.

17.    The Trustee also realized that the Debtors' potential lapse of their deadline to assume or reject unexpired leases could have a significant impact on value.  See 11 U.S.C. § 364(d)(4).  Indeed, a motion to evict the Debtors from a critical operating location was filed almost immediately following the Trustee's appointment in May 2012, as a result of the Debtors' apparent failure to extend the section 365(d)(4) deadline.[8]

18.    Based on this review of the Debtors' operations as of his appointment, the Trustee concluded that the Debtors' businesses were perilously close to losing key customers, which, if that occurred, could have resulted in a shutdown of the Debtors' entire business enterprise.

---

[8]    See *Motion for Relief from Stay as to 325 Marmon Drive, Bolingbrook, Illinois* [Docket No. 371].

K&E 26895708

C.     **Actions Taken by the Trustee and Their Results**

19.     After his appointment, the Trustee and his professionals aggressively sought to correct the reporting, operational, and business issues that threatened these chapter 11 estates. To address the widespread financial documentation and reporting problems, the Trustee personally led a "deep dive" into the Debtors' books and records, painstakingly verifying or correcting them as needed or appropriate.  The Trustee also established controls and procedures that allowed the Debtors, for the first time, to internally produce monthly financial statements for each of their businesses.  Just eight weeks after his appointment, the Trustee had demonstrably improved the quality of the Debtors' financial reports, including by allowing the Trustee to reconcile a $2.5 million deposit account discrepancy in the Debtors' favor.  The Trustee's efforts to establish a firm grasp on the Debtors' financial information also formed the bedrock for the "data room" used to drive the sale process for the Debtors' assets.

20.     On the operational front, the Trustee engaged directly with major customers through in person and telephonic meetings immediately following his appointment.   The Trustee's personal efforts ensured there was a clear "business as usual" message delivered across the Debtors' platform.  As a result, the Debtors did not experience meaningful levels of customer loss following the Trustee's appointment in May 2012.  The Trustee also reached out to each level of the Debtors' 1,200-person workforce and conducted in person meetings across the Debtors' facilities in Illinois and New Jersey.  This process allowed employees to voice their concerns and to identify areas for improvement.  The Trustee further established and maintained an "open door" policy that he maintained throughout these chapter 11 cases.

D.      **The Trustee's Successful Sale Processes**

21.      From the outset, the Trustee's primary goals in these cases were to maximize stakeholder recoveries and bring these chapter 11 cases to an efficient resolution.  To that end, the Trustee successfully led a sale process resulting in the $51.2 million sale of the Debtors' operating businesses to Valid.  This value reflected, among other things, the Trustee's efforts to preserve critical customer relationships, to stabilize the Debtors' employee base and, perhaps above all, to establish clear financial reports, operating controls, and credibility around the Debtors' books and records that ultimately justified the significant price paid by Valid.  This sale preserved more than 1,200 employee jobs, generated value sufficient to pay substantially all of the operating Debtors' creditors in full, and will provide substantial recoveries on account of the Debtors' equity interests.

22.      In the months that followed the sale to Valid, the Trustee proceeded to sell all but one of the Debtors' owned real property assets,[9] generating a further $36.4 million in sale proceeds through two separate auctions.  These real estate values were, in many cases, driven by the terms of new operating leases negotiated directly by the Trustee with Valid for many of the Debtors' owned real property facilities.  In this process, the Trustee personally led negotiations with Valid around material terms of these leases.  The Trustee also separately negotiated a long-term lease with Valid for the occupancy of real property located at 325 Marmon Drive, Bolingbrook, IL 60440 ("325 Marmon"), which was previously owned by the chapter 7 estates of Pethinaidu Veluchamy and Parameswari Veluchamy.  See In re Veluchamy, Case No. 11-33413 (ERW) (Bankr. N.D. Ill).  Having that lease in place facilitated the chapter 7 trustee appointed in the Veluchamy bankruptcy to sell 325 Marmon with a profit of in excess of

---

[9]      The Trustee's sale process for this remaining parcel (owned by Creative Investments) remains ongoing.

9

$2 million for the chapter 7 estates and permitted the Trustee to recover approximately $200,000 in property taxes advanced by these chapter 11 estates on account of 325 Marmon.  See id. at [Docket No. 637] (authorizing sale of 325 Marmon).

23.     Through these efforts, and pursuant to the fully-consensual Plan that the Trustee proposed (and that the Court confirmed), the Trustee has paid four of the Debtors' mortgage lenders in full and will generate estimated equity distributions of at least $11.0 million

## Professional Compensation and
## Reimbursement of Expenses Requested To Date

24.     By this Fourth Interim and Final Fee Application, the Trustee seeks approval and allowance of his compensation for professional services rendered and reimbursement of expenses incurred during both the Fourth Interim Fee Period and the Final Fee Period.

25.     In accordance with the Interim Compensation Order, the Trustee has previously filed and served twelve monthly applications for the periods covering May 10, 2012, through May 31, 2013 (collectively, the "Monthly Applications").[10]  The Trustee has also previously filed three interim fee applications for the periods covering May 10, 2012, through February 28, 2013 (collectively, the "Interim Applications").[11]  Each of the Monthly Applications and Interim Applications is incorporated herein by reference.

26.     Detailed schedules of services rendered by the Trustee during both the Fourth Interim Fee Period and the Final Fee Period are attached to the Monthly Applications as **Exhibit A** and include:  (a) a summary of the hours spent, the names of each professional and paraprofessional rendering services to the Debtors' estates during the relevant fee period, the regular customary billing rates, and the total value of time incurred by each of the Trustee's

---

[10]   See [Docket Nos. 447, 515, 607, 720, 815, 924, 973, 1051, 1141, 1414, 1480, 1657, & 1759].

[11]   See [Docket Nos. 792, 1036, & 1547].

K&E 26895708

professionals rendering services to the Debtors' estates during the relevant fee period; (b) a copy of the time entries reflecting the time recorded for these services; and (c) a statement of expenses incurred by the Trustee during the relevant fee period.  All time entries and requested expenses are in substantial compliance with Local Rule 5082-1.  Pursuant to the Interim Compensation Order, by this Application the Trustee seeks allowance of his requested commission on a final basis, with the exception of those fees and expenses incurred with respect to Avadamma, LLC and Creative Investments during the time period from May 4, 2013 through May 31, 2013, for which the Trustee seeks allowance on an interim basis only.

27.    Specifically, the Trustee seeks: (a) allowance of fees in the amount of $410,788.50 for professional services rendered during the Fourth Interim Fee Period; (b) allowance of expenses incurred in the amount of $2,851.50 during the Fourth Interim Fee Period; (c) authorization to pay the $82,157.70 in fees representing the 20 percent holdback of fees during the Fourth Interim Fee Period, as required by the Interim Compensation Order; (d) allowance, on a final basis, of a commission of $4,017,267.31 for the Final Fee Period, reflecting a voluntary reduction of $3,101,806.00 (before expenses) versus the total commission allowable under section 326(a) of the Bankruptcy Code.

## The Trustee's Requested Commission Should be Approved

28.    The Trustee respectfully submits that that his total requested commission in these chapter 11 cases should be approved, including the Success Fee.  The Success Fee, when combined with the Trustee's requested commission on account of for hourly fees and expenses, totals $4,017,267.31, or approximately 59 percent of the maximum commission allowable under section 326(a).  The Trustee respectfully submits this commission requested pursuant to this Application: (a) is consistent with the statutory requirements fixed by sections 326(a) and 330(a) of the Bankruptcy Code; (b) reflects a total compensation opportunity comparable to similarly

11

situated executives and restructuring professionals, including with respect to the Success Fee; and (c) is fair and reasonable in light of the extraordinary results achieved by the Trustee in these chapter 11 cases, particularly given that the Trustee's requested commission falls well below the maximum compensation level fixed by section 326(a) of the Bankruptcy Code.

### A. The Trustee's Requested Commission Is Consistent With Sections 326(a) and 330(a) of the Bankruptcy Code

29.    Generally, a chapter 11 trustee's compensation is determined using the formula fixed by section 326(a) of the Bankruptcy Code.  See 11 U.S.C. § 326(a).  Under that formula, courts can award a trustee "reasonable compensation" not to exceed fixed percentages based on distributions to creditors.[12]  Here, total creditor disbursements subject to section 326(a)'s formula exceed $214 million.  The Trustee's total allowable compensation is therefore approximately $6.8 million.  See 11 U.S.C. § 326(a); (**Ex. D**).  This $6.8 million total is $3.1 million (or 42 percent) greater than the $4.0 million commission requested on a final basis by this Application;[13] this $3.1 million balance has been voluntarily waived by the Trustee.

30.    In evaluating the Trustee's Application, section 330(a)(7) of the Bankruptcy Code specifically directs the Court to consider "the amount of reasonable compensation" by analyzing such compensation "as a commission" earned pursuant to section 326(a).   See 11 U.S.C. § 330(a)(7).  Moreover, the "maximum amount" provided under section 326(a)'s formula may be awarded "in those instances of truly excellent work and efforts by a trustee."  In re Phillips, 392 B.R. 378, 391 (Bankr. N.D. Ill. 2008); see, e.g., In re Guyana Dev. Corp., 201 B.R. 462, 485

---

[12]    Specifically, section 326(a) provides that "[i]n a case under chapter . . . 11, the court may allow reasonable compensation under section 330 of this title of the trustee . . . not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims."  11 U.S.C. § 326(a).

[13]    The calculation presenting the $3.1 million waiver is set forth on **Exhibit D**.

K&E 26895708

(Bankr. S.D. Tex. 1996).  Conversely, it is well-recognized a trustee's compensation may be at risk where fees and expenses incurred on an hourly basis ultimately exceed the maximum commission allowed by statute—such as in low asset or no asset cases.  See 11 U.S.C. § 326(a). Thus:

> [i]t is . . . entirely understandable for trustees to seek the maximum amount of compensation in the 'asset' cases in order to offset their time and efforts, which are virtually uncompensated or at least highly 'undercompensated' in the 'no asset' cases they handle.

Phillips, 392 B.R. at 391.  To be clear, the Trustee is not requesting the maximum commission allowable under section 326(a).  Rather, the Trustee is requesting an appropriate level of compensation, including the Success Fee, that reflects the outstanding results achieved in these chapter 11 cases but that still reflects a voluntary waiver of approximately $3.1 million out of the Trustee's maximum allowable commission.  (See **Ex. D**.)

31.     Section 330(a) of the Bankruptcy Code further directs the Court to consider the "reasonableness" of the Trustee's Application by reference to "all relevant factors," including the specific factors identified at section 330(a)(3) of the Bankruptcy Code.     See 11 U.S.C. § 330(a)(3).  Without question, a chapter 11 trustee (as opposed to a chapter 7 trustee) is one of those parties whose compensation is subject to evaluation pursuant to section 330(a)(3). See 11 U.S.C. § 330(a)(3); see also Eugene R. Wedoff, Major Consumer Effects of BAPCPA, 2007 U. Ill. L. Rev. 31, 58 (2007).

32.     But section 330(a)(3)'s direction to consider the "reasonableness" of compensation does not override the formula-based approach mandated by section 326(a) and section 330(a)(7).  Congress's conspicuous election to not distinguish between a chapter 11 trustee and a chapter 7 trustee with respect to the "commission" subject to evaluation pursuant to section 330(a)(7) cannot be disregarded out of hand.  See In re Hudson Transfer Grp., Inc., 245

13

B.R. 456, 460 (Bankr. S.D.N.Y. 2000) ("Where Congress expressly includes an element in one

provision of a statute, and fails to include it in another, it manifests an intent to confine the

element to the specified instance."). Indeed, section 330(a) is, by its terms, "subject to"

section 326(a). See 11 U.S.C. § 330(a).

33.    In this sense, compensation within the cap imposed by 326(a) should be reviewed

analogously to transaction fees approved pursuant to section 328 of the Bankruptcy Code.

See Guyana Dev. Corp., 201 B.R. at 481 ("Section 326 of the Bankruptcy Code which sets the

percentage caps on trustee fees is paralleled by section 328 of the Bankruptcy Code which caps

the compensation available to other professionals . . . ."). Section 328 precludes analysis of

requested compensation on an hourly basis alone under section 330(a)(3). See Alan N. Resnick

& Henry J. Sommer, 15 Collier on Bankruptcy ¶ 328.02 (16th rev. ed. 2012). Rather, courts are

directed to consider the reasonableness of such compensation in light of the total fee structure

(which may include a success fee) approved pursuant to section 328 because section 330(a) is

"subject to" section 328. See In re McDonald Bros. Constr., Inc., 114 B.R. 989, 994 n.2

(Bankr. N.D. Ill. 1990) (Wedoff, J.) ("Section 330 is subject to Section 328(a), which allows a

trustee (and hence a debtor in possession) to retain professionals (including attorneys) on any

reasonable terms, subject to court approval.")

34.    As with section 328, and as noted above, section 330(a) is "subject to section[]

326" in its entirety. See 11 U.S.C. § 330(a). The formula-based compensation fixed by section

326(a), like a transaction fee approved pursuant to section 328, fixes an important guidepost

towards assessing the "reasonableness" of compensation requested by a chapter 11 trustee.

Moreover, the amount of compensation allowed under section 326(a), like a transaction fee

approved per section 328, may appropriately exceed the compensation earned on a strictly hourly

14

basis.  See In re Clemens, 349 B.R. 725, 731 (Bankr. D. Utah 2006) ("Thus, the Court might easily conclude that although the Trustee's itemization supports a much lower award, the Trustee is entitled to a higher amount in light of its consideration of § 326(a) as part of its reasonableness determination.").

35.    Within this framework, section 330(a)(3) identifies certain factors that may be used to evaluate the overall commission requested pursuant to section 326(a), including:

- the time spent on such services;

- whether the person is "board certified or otherwise has demonstrated skill and experience in the bankruptcy field";

- whether such services were beneficial to the bankruptcy estate; and

- whether the requested compensation is in line with "the customary compensation charged by comparably skilled practitioners"

See 11 U.S.C. § 330(a)(3).  Analyzing the maximum fees that may be awarded pursuant to section 326(a)'s formula in light of such factors may also support an awarding the maximum commission available pursuant to section 326(a).  See Guyana Dev. Corp., 201 B.R. at 485 ("The Court finds that the Johnson factors fully support an award of the maximum compensation to the trustee under 11 U.S.C. § 326.").[14]

36.    Each of the applicable factors set forth in section 330(a)(3) supports awarding the total compensation requested here—including the Success Fee.  First, the Trustee's requested Commission fairly reflects the time and opportunity cost required to achieve the tremendous results obtained in these chapter 11 cases.  See 11 U.S.C. § 330(a)(3)(A).  Since his appointment

---

[14]   The "Johnson" factors referenced by Guyana Development closely parallel the specific factors identified by section 330(a)(3) of the Bankruptcy Code, including:  the time and labor required by the task at issue; the novelty and difficulty of the questions at issue; the skill requisite to perform the service at issue; the preclusion of other employment by the acceptance of the case; the customary fee; and the amount involved and the results obtained.  See Guyana Dev., 201 B.R. at 478; see also id. ("These factors [set forth by section 330(a)(3)(A)] are similar to the Johnson factors adopted by the Fifth Circuit years ago to be utilized in evaluating the reasonableness of attorneys fees.").

15

in May 2012, Mr. Caruso has personally spent more than 1,900 hours managing these chapter 11 estates. In this time, Mr. Caruso served as the Debtors' de facto Chief Executive Officer and Chief Restructuring Officer.

37.     Second, the Trustee's total requested Commission is consistent with Mr. Caruso's overall standing as a recognized leader in the restructuring field. See 11 U.S.C. § 330(a)(3)(E). Mr. Caruso has been an insolvency professional for more than three decades. Over this time, Mr. Caruso has assumed day-to-day management control for 12 different companies whose operations included sub-prime financial services, metal fabrication, injection molding, blow molding, manufacturing, residential construction, real estate management, government contracting, hospitality and food service, wholesale and retail oil distribution, and computer software. For example, Mr. Caruso has served as the Chief Restructuring Officer for Giordano's during its chapter 11 proceedings and as the financial advisor to the William J. McEnery Revocable Trust in the Gas City bankruptcy. Mr. Caruso has served as a chapter 7 and chapter 11 trustee in numerous matters and has also been called upon for expert testimony on multiple occasions. Additionally, Mr. Caruso is a member of the American Bankruptcy Institute, the Association of Insolvency Accountants, and the American and Illinois Institutes of Certified Public Accountants.

38.     Finally, and as discussed more fully below, the Trustee's requested compensation, including the Success Fee, is fair and reasonable in light of the compensation opportunities generally available to professionals of Mr. Caruso's stature who undertake similar roles both inside and outside the chapter 11 context and the tremendous results achieved for creditors and equity holders alike in these cases. See 11 U.S.C. §§ 330(a)(3)(C), (F).

K&E 26895708

**B.**     **The Trustee's Requested Commission Is**
**Consistent with Compensation Opportunities**
**Available to Corporate Officers and Similarly-Situated Professionals**

39.     Under Section 330(a)(3)(F), the Court may consider whether the Trustee's
requested compensation is reasonable based on "the customary compensation charged by
comparably skilled practitioners in cases other than cases under this title."
See 11 U.S.C. § 330(a)(F).   And, as noted above, a commission allowed under sections 330(a)
and 326(a) may properly account for outstanding results achieved in a particular case—even
where such a commission exceeds fees or expenses incurred on an hourly basis alone.   See
Clemens, 349 B.R. at 431; see, e.g., In re Giordano's Enters., Inc., Case No. 11-06098 (Bankr.
N.D. Ill. Jan. 11, 2012) [Docket No 1101] (approving $500,000 success fee for chapter 11 trustee
following a successful sale process).   The Seventh Circuit has itself recognized "[i]n section 330
and its legislative history Congress expressed its intent that compensation in bankruptcy matters
be commensurate with the fees awarded for comparable services in non-bankruptcy cases."
UNR Indus., 986 F.2d 207, 209 (7th Cir. 1993).   Thus, a success fee is entirely appropriate
(if not required) where an "hourly rate" approach, by itself, fails to approximate the
compensation opportunities available to an officer whose role is comparable to that of Mr.
Caruso here.

40.     Incentive-based awards are a standard element of executive compensation outside
of chapter 11.   See Belinfanti, 41 Hofstra L. Rev. at 101.   Success fees are also an accepted
component of compensation for restructuring professionals, including restructuring professionals
serving in chapter 11.   (See **Ex. C**.)   The Trustee's blended hourly rate (including the Success
Fee) of $479.27 is also consistent with the hourly rate for similarly-situated professionals in
chapter 11, (see id.).   Absent the Success Fee requested here, no such opportunity would be
available to compensate the Trustee for the outstanding results he achieved in these cases—

17

notwithstanding the fact that the Trustee's requested commission falls well-within the statutory

limits fixed by section 326(a).   Thus, the Success Fee, as a component of the Trustee's total

commission, is entirely consistent with both the Seventh Circuit's direction that professionals

receive "the same compensation as they would earn in performing similar services outside the

context of bankruptcy," UNR Indus., 986 F.2d at 210, and the compensation opportunities,

including success fees, that are also approved for restructuring professionals within chapter 11.

(See **Ex. C**.)

> ### C.   The Trustee's Total Requested
> ### Commission Is Fair and Reasonable In Light
> ### of the Trustee's Extraordinary Results In These Chapter 11 Cases.

41.    The total commission otherwise payable under section 326(a) may be

appropriately awarded to a trustee "in those instances of truly excellent work and efforts . . . ."

Phillips, 392 B.R. at 378.  And, although the Trustee has voluntarily reduced his commission by

approximately $3.1 million versus the total commission allowable under section 326(a), the

Trustee respectfully submits that the record supports a finding of such "excellent work and

efforts" here.  As discussed at length above, upon his appointment the Trustee found himself in

the middle of what was rapidly becoming an "off the tracks" restructuring, characterized by

significant financial, operational, and managerial challenges, as well as animosity among

equityholders, major creditors, and other parties in interest.   That dangerous combination

threatened to materially erode business value.

42.    Following his appointment, the Trustee successfully sold substantially all the

Debtors' operating businesses and real estate.  These sale proceeds were promptly distributed

through a chapter 11 plan that provides full distributions to practically all of the Debtors'

creditors.  See In re Pinnacle Airlines Corp. 483 B.R. 381, 407 (Bankr. S.D.N.Y. 2012)

(observing that plan confirmation is "the ultimate goal of any reorganization").  To date, the

Trustee has repaid more than $78.1 million to creditors—reflecting full repayments to each of the operating Debtors' creditors and all but two of the Debtors' mortgage lenders. The Trustee further estimates that distributions on account of equity interests will exceed $11.0 million, if not more. And, since his appointment as Trustee, these chapter 11 cases have been characterized by dialogue, consensus-building, and negotiation—as opposed to the animosity that characterized these proceedings prior to May 2012. On this record, the Trustee respectfully submits that his services on behalf of these estates have materially benefited all stakeholders and that his total requested commission of $4,017,267.31 is fair and reasonable under the facts and circumstances of the chapter 11 cases.

## Conclusion

43.    In light of the foregoing, the Trustee respectfully submits that the total compensation requested for both the Fourth Interim Fee Period and the Final Fee Period, including the Success Fee, fairly reflects the value of services rendered to these chapter 11 estates and should be approved on an interim and final basis, as applicable.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

19

44.    WHEREFORE, the Trustee respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**, for: (a) allowance of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred in the amount of $413,640.00 for the Fourth Interim Fee Period; (b) authorization to pay the full amounts requested in the Monthly Applications for March 2013 through May 2013, including the 20 percent holdback of fees as provided for in the Interim Compensation Order; (c) allowance on a final basis of the Trustee's commission in the amount of $ 4,017,267.31 for Final Fee Period; and (d) granting related relief.

Dated: July 2, 2013                         Respectfully Submitted,

                                            */s/ David L. Eaton*
                                            James H.M. Sprayregen, P.C. (IL Bar No. 6190206)
                                            David L. Eaton (IL Bar No. 3122303)
                                            Ryan Preston Dahl (IL Bar No. 6292645)
                                            **KIRKLAND & ELLIS LLP**
                                            300 North LaSalle Street
                                            Chicago, Illinois  60654
                                            Telephone: (312) 862-2000
                                            Facsimile:  (312) 862-2200

                                            *Counsel to the Chapter 11 Trustee*

20

**Exhibit A**

**Proposed Order**